JOSEPH AVILES ET UX. *v.* ESHELMAN ELECTRIC CORPORATION ET AL.

[No. 33, September Term, 1977.]

*Decided December 8, 1977.*

530

*Motion for reconsideration filed January 6, 1978; denied January 20, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Joseph C. V. Ferrusi* for appellants.

*William N. Coggins,* with whom were *Coggins & Harman, P.A.* on the brief for Claire Cooke of Maryland, Inc.; *Sebert H. Keifer* on the brief for Capital Tile Company, Inc.; *George E. Meng* on the brief for Ace Plumbing & Heating Co., Inc.; *Robert W. King* on the brief for Eshelman Electric Corporation; and *Gary Gasparovic* on the brief for Bryans Road Building & Supply Co., Inc., for appellees.

DIGGES, J., delivered the opinion of the Court.

This mechanics' lien suit, here on certiorari addressed to the Court of Special Appeals prior to that court considering the matter, involves issues which surfaced in the wake of our decision in *Barry Properties v. Fick Bros.,* 277 Md. 15, 353 A. 2d 222 (1976). In that case, decided on February 10, 1976, we

held portions of the then-existing mechanics' lien statute to be unconstitutional.[1] The General Assembly, being in regular session at the time, reacted to this ruling by enacting Chapter 349 of the Laws of 1976 which, effective May 4 of that year,[2] did away with the mechanics' lien law then set out in the Maryland Code as sections 9-101 through 9-108, 9-111 and 9-113 of the Real Property Article (1974 & 1975 Cum. Supp.), and substituted in its place, without a saving provision, a fundamentally different lien statute. Since answers to the several issues framed by the appellants for this appeal become irrelevant in light of our conclusion that any entitlement which appellees may have possessed to establish and enforce a lien evaporated upon Chapter 349 becoming effective, we shall set out only such of the facts as are relevant in explaining why we think the appellee-claimants may not now maintain this action.

On January 2, 1975, appellants Joseph and Helen Aviles executed a contract with Olympic Engineering Corporation as general contractor which provided that Olympic would construct a dwelling for $80,449 on a lot owned by the appellants in Tantallon-on-the-Potomac, a subdivision located in Prince George's County. To assist them in financing this obligation Mr. and Mrs. Aviles arranged for a series of loans from Mrs. Helen Marcelonis, the mother of Mrs. Aviles; these loans were evidenced by several promissory notes totaling $43,312. Although Olympic made considerable progress in constructing the house and received from the owners payments totaling approximately $75,000, the builder experienced financial difficulties which initially delayed the work and eventually resulted in bankruptcy, causing abandonment of construction altogether. Upon learning of this development five of the subcontractors — the appellees here—reacted by first giving notice to the owners of their

---

1. For a thorough analysis of the *Barry Properties* decision and a discussion of its impact, see Frank & McManus, *Balancing Almost Two Hundred Years of Economic Policy Against Contemporary Due Process Standards — Mechanics' Liens in Maryland After Barry Properties,* 36 Md.L.Rev. 733 (1977).

2. Chapter 349 of the Laws of 1976 was enacted by the General Assembly as emergency legislation and consequently became effective when signed by the Governor on May 4, 1976. *See* Md. Const., art. XVI, § 2.

intention to file and then filing at varying times in 1975 lien claims under sections 9-103 and -106 of the Real Property Article then in force.

Appellee Eshelman Electric was the first of the subcontractors to institute foreclosure proceedings when it filed its bill in the Circuit Court for Prince George's County on October 17, 1975; appellee Capital Tile followed suit on January 14, 1976. On August 11, 1976, the trial court directed that the two pending foreclosure actions be consolidated and that the remaining three subcontractors which had filed liens, but which had not instituted foreclosure proceedings, be joined as party defendants in the case. Each of these latter three lien claimants (the remaining appellees here) responded with an answer and in addition filed a cross-complaint seeking to foreclose its lien. As it developed, the principal issue determined at the two-day trial on the merits which began on December 21, 1976, was whether the deeding, twelve days earlier, of the property from the appellants to Mrs. Marcelonis, in return for both a cancellation of debt in the amount of $48,936.01 and the execution of a purchase money deed of trust in the amount of $26,063.99, or a total purchase price of $75,000, required the court to deny foreclosure and dismiss the proceedings. The trial judge, after finding as a fact that the Aviles-to-Marcelonis conveyance "was not a transfer to a bona fide purchaser for value within the contemplation of Section 9-102 (c) of The Real Property Article of the Maryland Code [(1974, 1977 Cum. Supp.)]" as enacted the previous May,[3] established the claim of each of

---

3. Section 9-102 (c) reads:

> *Exemptions.* — However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a *bona fide purchaser for value.* [(Emphasis supplied.)]

A similar provision was contained in the repealed mechanics' lien law as § 9-101 (b) and read:

> *Exemptions.* — However, no building or the land on which it is erected is subject to a lien . . ., if it is proved by evidence that all the money due for work contracted and material furnished in repairing or constructing the building has been paid to any natural person, firm, or corporation who actually performed the labor or

the five appellees as a lien on the house and lot, and appointed trustees to sell the property should the lien indebtedness not be satisfied within thirty days. This appeal followed.

We begin our explanation as to why, without reaching the issues decided by the trial court, we conclude its decree must be reversed by restating a principle of statutory construction now well-established in this State: Absent a contrary intent made manifest by the enacting authority, any change made by statute or court rule affecting a remedy only (and consequently not impinging on substantive rights) controls all court actions whether accrued, pending or future.[4] *Janda v. General Motors,* 237 Md. 161, 168, 205 A. 2d 228, 232 (1964); *Richardson v. Richardson,* 217 Md. 316, 320, 142 A. 2d 550, 553 (1958).

Although there is a contrary view expressed by the courts of some of our sister states, this Court more than three-quarters of a century ago in *Wilson v. Simon,* 91 Md. 1, 45 A. 1022 (1900), confirmed that in Maryland mechanics' lien statutes create no vested right, but are only an in rem remedy which can be changed or completely withdrawn at the whim of the legislature so as to control foreclosure actions, be they accrued, pending or future. *Accord, Md. Casualty Co. v. Lacios,* 121 Md. 686, 690, 89 A. 323, 324 (1913); *Evans Co. v. Internat. Trust Co.,* 101 Md. 210, 218, 60 A. 667, 669-70 (1905). A mere reading of *Wilson* will demonstrate that factually and procedurally it is so akin to the case we now ponder that it is dispositive of this appeal. There, with a lien foreclosure suit pending but before a court hearing on the merits, the General Assembly enacted Chapter 502 of the Laws of 1898 which repealed the then-existing statute authorizing liens for materials furnished in construction of buildings in Baltimore City, and substituted for that law a statute which permitted a lien only for work performed on

supplied the materials and the building has been granted to a *bona fide purchaser for value without notice.* [(Emphasis supplied.)]
Under the view we take of this case, we need not assess the significance of the word change in the emphasized language.
4. For a chronicling of the rules formulated by courts in determining whether a statute or court rule should be applied retrospectively or prospectively, see Janda v. General Motors, 237 Md. 161, 168-69, 205 A. 2d 228, 232-33 (1964).

such structures. This Court was required to decide under the 1898 enactment

> [m]ust it be construed so as to destroy the appellant's lien? and if so, is it invalid in respect to all liens existing and valid at the date of its passage, as being a law impairing the obligation of contracts, and within the inhibition of the Constitution of the United States, Article 1, sec. 10, which declares that "No State shall pass any law impairing the obligations of contracts." [91 Md. at 4-5 [1022].]

Our predecessors, relying on *Weiskittle v. State,* 58 Md. 155, 158 (1882), and *Dashiell v. Baltimore,* 45 Md. 615, 622 (1877), concluded the first question must be answered in the affirmative and opined:

> In the Act of 1898, there are no saving clauses in favor of liens for materials, then existing, and all the provisions allowing such liens are entirely omitted. All such liens, therefore, are obliterated from the laws of the State as completely as if they had never existed, except for the purpose of suits "which were commenced, prosecuted and concluded whilst it was existing law." [91 Md. at 5 [1023].]

Judge Page in speaking for the *Wilson* Court acknowledged the second or constitutional question to be more difficult and the decisions throughout the country to be in substantial conflict. But after an examination of the rationale given for the conclusion each of these authorities reached, the Court stated that

> We are of [the] opinion, therefore, on principle, that the effect of the repealing statute was not to impair any of the obligations of the [materialman's] contract, though it took from him the lien theretofore given him; and that the right to a mechanics' lien for materials furnished under the law of this State is not a vested right, but an extraordinary remedy only, which the State may discontinue at pleasure. [91 Md. at 9 [1024].]

This Court in *Wilson* further indicated that the following were factors which to a substantial degree dictated this result:

> The contract under which the [materialman] parted with his property gave him (aside from the statute) no right to look to the buildings. The owner was not a party to it, and came under no personal obligation to pay him. His right to a lien on the buildings was not a right which sprang either from the obligation or from any of the principles or practices of the common law. It was an extraordinary remedy, the creature of "positive statutory enactment." When it had been discontinued by the passage of the Act of 1898 all the contractual and common law rights of the parties remained. The [materialman's] right to bring his action, secure judgment and execution and make sale of [the general contractor's] property remained unimpaired. [91 Md. at 7 [1023].]

We now affirm both the conclusion and its rationale as expressed by our predecessors in *Wilson,* and by the same reasoning conclude that since Chapter 349 of the Laws of 1976 expressly repealed the old mechanics' lien law without a saving provision, the repealed sections of the statute as they existed prior to May 4, 1976, have disappeared as affecting this case to the same extent as though they never existed.[5] *See Beechwood Coal Co. v. Lucas,* 215 Md. 248, 256, 137 A. 2d 680, 684 (1958); *State v. Amer. Bond'g Co. of Balto.,* 128 Md. 268, 272-73, 97 A. 529, 531 (1916).

This brings us to a consideration of whether, absent specific legislative authorization, the substitute 1976 law rescues the five lien claims before us from death by statutory repeal; even if the pre-1976 procedures which had been pursued by the

---

5. Whether this omission was intentional or inadvertent is of no consequence because when, as here, there is no ambiguity in the statute, the court is bound to interpret it as written and may not supply terms not expressed by the legislature. *See* Amalgamated Ins. v. Helms, 239 Md. 529, 534-36, 212 A. 2d 311, 315-16 (1965). Nor is the general saving provision set out in Code (1957, 1976 Repl. Vol.), Art. 1, § 3, of any aid to the lien claimant-appellees, since the lien statute does not involve the declaring or enforcement of a "penalty, forfeiture or liability" as required by that act.

appellees under the old law can be utilized in following the dictates of the 1976 statute, a question we do not reach, we conclude that in the circumstances present here it does not. Although under both section 9-110 of the old statute and section 9-112 of the new, the legislation is remedial and is to be construed liberally in favor of mechanics and materialmen, since such a lien, unknown at common law, is a creature of statute, it is "obtainable only if the requirements of the statute are complied with." *Freeform Pools v. Strawbridge,* 228 Md. 297, 301, 179 A. 2d 683, 685 (1962). See in addition *Himelfarb v. B & M Weld. & Iron Wks.,* 254 Md. 37, 40, 253 A. 2d 842, 844 (1969) and cases there cited. Section 9-105 of the 1976 enactment provides in pertinent part:

> (a) In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court : for the county| where the |land or any part of the land is located *within 180 days after the work has been finished or the materials furnished.* The proceedings shall be commenced by filing with the clerk, the following:

> (1) A petition to establish the mechanic's lien, which shall set forth at least the following:

> * * *

> (2) An affidavit by the petitioner or some person on his behalf, setting forth facts upon which the petitioner claims he is entitled to the lien in the amount specified..... [Emphasis supplied.]

The record discloses that no lien claimant here complied with all of the provisions of this section. Among other deficiencies no appellee filed an affidavit as required by provision (2) of subsection (a) and only one filed a pleading which could even arguably be interpreted as a petition to establish its lien within 180 days following completion of the work or furnishing of the materials, as required by subsection (a). As each of the lien claimants states that its job was completed by at least June 30, 1975, and, with the exception of Eshelman's, no suit was filed by any of them until January

1976, even if we construed the proceeding to foreclose the mechanics' lien (obviously instituted under the pre-1976 statute) to be one to establish a lien under the new act, the action was not instituted by the remaining four appellees within 180 days after the work had been finished or the materials furnished. Consequently, this failure to timely file clearly bars the actions of all lien-claimants except Eshelman and, even assuming the latter subcontractor's suit to be timely filed under the new statute, its claim too must fail since there is no compliance with provision (2) of subsection (a).

Accordingly, as the pre-1976 lien statute was repealed without a saving clause, and further as each appellee failed to comply with the provisions of the 1976 act (even if one or more of them could have), there exists no basis for establishing or enforcing any claims and the decree of the circuit court must be reversed.

*Decree of the Circuit Court for Prince George's County reversed and case remanded to that court with instructions to dismiss the consolidated cases.*
*Costs to be paid by appellees.*