487 A.2d 282

**Gary O. HIMMIGHOEFER et al.**

v.

**MEDALLION INDUSTRIES, INC.**

**No. 87, Sept. Term, 1984.**

Court of Appeals of Maryland.

Feb. 5, 1985.

Jeffrey B. Fisher, Marlow Heights (Fisher & Walcek, Marlow Heights, on brief), for appellant.

Kenneth L. Crosson, Fairfax, Va., for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

SMITH, Judge.

We are here faced with the conflicting claims of purchasers of real estate and a mechanics' lienor. The purchasers acquired equitable title prior to institution of the suit to establish mechanics' liens. We shall hold that the purchasers prevail.

The facts are not in dispute and were the subject of stipulation in the trial court. Between May 30, 1981, and September 21, 1981, appellee Medallion Industries, Inc., furnished work and materials on two sites in a subdivision in Prince George's County known as Canterbury Estates. This was done pursuant to contract with K.R. Yates Builders, Inc. The land was owned by Ridgely Builders, Inc. On November 17, 1981, Ridgely contracted to sell one lot with the improvements thereon to appellants Gary O. Himmighoefer and wife. The purchase price was $125,000 with $5,000 being paid down at the time of contract. On November 24, 1981, Ridgely contracted to sell the other lot to appellant Robert B. Holmes for $115,000, of which $2,000 was paid down. These contracts were not recorded. On December 23, 1981, Medallion filed a petition in the Circuit Court for Prince George's County to establish a mechanics' lien against each lot. Ridgely was the only named defendant. On December 31 Ridgely conveyed one lot to the Himmighoefers. The full purchase price was paid. On January 8 the other lot was conveyed by Ridgely to Holmes upon payment of the full purchase price. Ridgely did not respond to the show cause order on the petition to establish the mechanics' lien. A default decree was passed on February 2, 1982, entering liens totaling $3,350.00.

The appellants acquired knowledge of the mechanics' liens when their properties were advertised for sale. They filed petitions to intervene, to vacate the decree, and to

enjoin the sales. The trial court held "that once the deed was recorded, the purchasers became a matter of record and must be joined in the case." It found that the "purchasers were not joined and the Court has no jurisdiction over their interest in their absence." Hence, they were granted leave to intervene and the order establishing the liens was vacated. No appeal was filed.

The matter ultimately came on for hearing on cross motions for summary judgment. The trial court held that appellants had "constructive notice" by virtue of the petition to establish liens. Accordingly, it passed an order directing that a mechanics' lien be entered against each property. All proceedings for execution of the liens were stayed for a period of thirty days with the proviso that if an appeal were noted in that time the stay would continue "until conclusion of the appellate process . . . ." An appeal was entered to the Court of Special Appeals. We granted a petition for a writ of certiorari prior to the hearing of the cause in the intermediate appellate court.

We suspect that a part of the problem here arises from confusion in the minds of some between the law as it existed prior to our decision in *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976), and the law as it exists today. In *Barry* Judge Digges traced the prior law for the Court back to Ch. 45, § 10, of the Acts of 1791, applicable "only to that section of the State which was being ceded to the United States to constitute the District of Columbia, and was passed by the Legislature, at the urging of Thomas Jefferson and James Madison, to facilitate the speedy construction of the new capital city of Washington." 277 Md. at 17, 353 A.2d at 224.

The "old" law was found in Maryland Code (1974, 1975 Cum.Supp.) §§ 9–101 to –110, Real Property Article. Section 9–101 provided:

"(a) *Property and debts to which lien attaches.*—Every building erected and every building repaired, rebuilt, or improved, to the extent of one fourth of its value, *is*

*subject to a lien* for the payment of all debts without regard to the amount contracted for work done for or about the building, and for materials furnished for or about the building, including the drilling and installation of wells for the purpose of supplying water, the construction or installation of any swimming pool, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers, or nursery products of any kind or description and the grading, filling, landscaping, and paving of the premises.

"(b) *Exemptions.*—However, no building or the land on which it is erected is subject to a lien provided in subsection (a), if it is proved by evidence that all the money due for work contracted and material furnished in repairing or constructing the building has been paid to any natural person, firm, or corporation who actually performed the labor or supplied the materials and the building has been granted to a bona fide purchaser for value without notice." (Emphasis added.)

Section 9–103 provided for notice to the owner where the contract was with a person other than the owner. Section 9–105 said that claims should be filed in the office of the clerk of the circuit court of the county. Under § 9–106 the lien of the debt for which a claim was filed expired at the end of one year from the day on which it was filed. During that time the claimant might bring proceedings in equity to enforce his lien. Up until the bringing of such an action a landowner had no notice of the lien upon his property, unless notice was given under § 9–103. Under this statute a lien, once entered, dated back to the beginning of construction, notwithstanding the actual date of work done or materials delivered. Section 9–107(b) stated in pertinent part, "A mechanics' lien has priority over any mortgage, judgment, lien or encumbrance attaching to the building or ground subsequent to the commencement of the building."

The Court said in *Barry:*

"We conclude, therefore, that, because it allows prejudgment seizures without notice, a prior hearing or other

sufficient safeguards, and cannot be justified under the extraordinary circumstances exception, Maryland's mechanics' lien law is incompatible with the due process clauses of Article 23 and the Fourteenth Amendment." 277 Md. at 33, 353 A.2d at 233.

\* \* \* \* \* \*

"If it is possible, then, and we think it is, to delete the aspect of the statute which renders it unconstitutional— its taking of property without providing sufficient safeguards—while still preserving enough to have a law capable of fulfilling the principal legislative intent, we must do so. We think that this can be accomplished by excising that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination in a proceeding sufficient with respect to due process. We therefore hold that under the current statute there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (i.e., a declaratory judgment action).[12] What the claimant, be he a general contractor or subcontractor, possesses up to that point in time is a chose in action. Under this ruling, we believe, the statute continues to effectuate the primary legislative intent, yet the owner is not deprived of a significant property interest without due process since the owner's interest is not impinged upon until after he is provided with notice and an opportunity for a hearing. It follows that § 9–107(b), to the extent that it grants mechanics' liens 'priority over any mortgage, judgment, lien or encumbrance attaching to the building or ground subsequent to the commencement of the building' but prior to the time the lien is established by a judicial determination, is also null and void since to hold otherwise would permit contractors to seize with their left hand what we have

said they cannot grasp with their right." 277 Md. at 36–37, 353 A.2d at 235 (footnote 13 omitted).

Footnote 12 stated:

"We do not here hold that the Legislature could not enact a mechanics' lien law permitting general contractors and subcontractors to obtain liens prior to owners being given notice and an opportunity for a hearing if the statute includes safeguards such as those discussed in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Rather, in this case, we only hold that since the present law does not include such safeguards no lien can exist under it until after owners are provided with notice and a chance for a hearing." 277 Md. at 37, 353 A.2d at 235.

As Judge Digges put it for the Court in *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 379 A.2d 1227 (1977):

"The General Assembly, being in regular session at the time, reacted to this ruling by enacting Chapter 349 of the Laws of 1976 which, effective May 4 of that year,[2] did away with the mechanics' lien law then set out in the Maryland Code as sections 9–101 through 9–108, 9–111 and 9–113 of the Real Property Article (1974 & 1975 Cum.Supp.), and substituted in its place, without a saving provision, a fundamentally different lien statute." 281 Md. at 531, 379 A.2d at 1228.

Footnote 2 noted that Ch. 349 of the Acts of 1976 was enacted by the General Assembly as emergency legislation that consequently became effective when signed by the Governor on May 4, 1976, under the provisions of Maryland Constitution Art. XVI, § 2.

The "new" law provides in Code (1974, 1981 Repl. Vol.) § 9–102(a), Real Property Article:

"Every building erected and every building repaired, rebuilt, or improved to the extent of 25 percent of its value is *subject to establishment of a lien* in accordance

with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, and the grading, filling, landscaping, and paving of the premises." (Emphasis added.)

Section 9–102(d), contains an exemption, relied upon by the appellants here, to the effect that "a building or the land on which the building is erected may not be subjected to a lien under th[at] subtitle if, prior to the establishment of a lien in accordance with th[at] subtitle, legal title has been granted to a bona fide purchaser for value." Medallion relies upon § 9–102(e), which says, "The filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle." Section 9–104 states that a subcontractor is not entitled to a lien under that subtitle unless within ninety days after doing the work or furnishing the materials he gives notice of his intention to claim a lien substantially in the form specified in subsection (b). It is conceded that the required notice was given in this case. Section 9–105(a) states, "In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court for the county where the land or any part of the land is located within 180 days after the work has been finished or the materials furnished." This is the proceeding which Medallion filed on December 23, 1981. Section 9–106(a) states in pertinent part:

"When a petition to establish a mechanic's lien is filed, the court shall review the pleadings and documents on file and may require the petitioner to supplement or explain any of the matters therein set forth. If the court determines that the lien should attach, it shall pass an order that directs the owner to show cause within 15 days from the date of service on the owner of a copy of the

order, together with copies of the pleadings and documents on file, why a lien upon the land or building and for the amount described in the petition should not attach."

Section 9–106(b) goes on to provide for the ultimate entry of a final order establishing a lien for want of any cause shown to the contrary, as was the case here. Section 9–106(d) provides for trial "as in the case of any other proceedings in equity." No lien exists until passage of a final order under § 9–106.

Although written in the context of the mechanics' lien law as it existed immediately after *Barry* but before the enactment of the "new" law, what Judge Powers said for the Court of Special Appeals in *Mervin L. Blades & Son v. Lighthouse,* 37 Md.App. 265, 377 A.2d 523 (1977), is an apt description of the situation prevailing under the "new" law:

"It will be seen that the very valuable right which was preserved was the right of a creditor for labor or materials to proceed *in rem* against improved property even though he could show no privity of contract with the owner, nor personal liability of the owner to him.

"It will be seen also that the lien concept in the law is otherwise virtually swept away. The claimant has no lien until he has gone to court and has prevailed in what would be, in essence, a debt suit at law, without a jury. Even then he achieves no priority over any existing mortgage, judgment, lien, or other encumbrance. He may or may not share pro rata with holders of other mechanics' liens, already established.

"Any claimant who is able to show personal liability of the owner to him may well prefer to obtain an *in personam* money judgment in a suit at law. The judgment would be an immediate lien against all real estate of the owner, and would afford other means of collection as well. A potential mechanics' lien claimant who chooses to invoke the now curtailed benefits of the statute must still comply with the various procedural prerequisites, all

within the specified time periods." 37 Md.App. at 269–70, 377 A.2d at 526–27.

Appellants here acquired equitable title once they contracted with Ridgely to buy the lots in question. The doctrine of equitable conversion is explained in 8A Thompson, *Real Property,* § 4447 (Grimes Replacement Volume 1963):

> "The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion." *Id.* at 273–74.

Medallion is of the view that the filing of its petition to establish a mechanics' lien gave constructive notice to the appellants and thus somehow established a claim against their lots. At best, this action could place Medallion in no better position than that which would have prevailed had it obtained a judgment against the seller between the time of the contracts of sale and the passing of the deeds. Unlike the situation which prevailed under the "old" law, there is no mechanics' lien under the "new" law until the passage of a court order establishing that lien. The lien exists purely by virtue of statute. To that effect *see Freeform Pools v. Strawbridge,* 228 Md. 297, 301, 179 A.2d 683, 685 (1962), and *Md. Casualty Co. v. Lacios,* 121 Md. 686, 690, 89 A. 323, 324 (1913), pertaining to the "old" law but equally applicable here. At common law a creditor had no remedy against the lands of his debtor. Judgments create liens only because the land is made liable by statute to be seized and sold on execution. *Messinger v. Eckenrode,* 162 Md. 63, 67, 158 A. 357, 358 (1932); *Caltrider v. Caples,* 160 Md.

392, 394, 153 A. 445, 446 (1931); *Valentine v. Seiss*, 79 Md. 187, 190, 28 A. 892, 893 (1894); *Dyson v. Simmons*, 48 Md. 207, 215 (1878); III *American Law of Property* § 11.29 at 83 (1952).

In *Stebbins-Anderson Co. v. Bolton*, 208 Md. 183, 117 A.2d 908 (1955), Judge Henderson said for the Court:

"The legal principles involved seem to be well-settled. It is a general rule that the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract. *Caltrider v. Caples*, 160 Md. 392 [153 A. 445], and cases cited. For the purposes of this rule it appears to be quite immaterial whether the credit was extended prior or subsequent to the execution of the contract. Cf. *Kinsey v. Drury*, 146 Md. 227, 232 [126 A. 125], *Cramer v. Roderick*, 128 Md. 422, 429 [98 A. 42], and *Valentine v. Seiss*, 79 Md. 187 [28 A. 892]. 'The effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfilment of the contract and the formal conveyance of the estate. The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered. A judgment creditor "stands in the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it is liable in the hands of the debtor at the time of the rendition of the judgment".' *Kinsey v. Drury, supra.* This has been the law at least since the decision in *Hampson v. Edelen*, 2 H. & J. 64 (1807). Except where modified by statute it is the rule in other states. See Note 87 A.L.R. 1505, and 3 *American Law of Property*, § 11.29. It is an application of the familiar doctrine of equitable conversion. Cf. *Skinner & Sons' Co. v. Houghton*, 92 Md. 68, 86 [48 A. 85]. The

rule does not depend upon actual notice to the creditor, although it is argued that that was the factual situation in the *Caltrider* case, *supra*. ' \* \* \* a judgment creditor is not in the position of a *bona fide* purchaser, and his claim is subject to prior, undisclosed equities. "He is neither in fact nor in law a *bona fide* purchaser, and must stand or fall by the real, and not the apparent rights of. the defendant in the judgment".' *Kolker v. Gorn*, 193 Md. 391, 398 [67 A.2d 258], and cases cited." 208 Md. at 187–88, 117 A.2d at 910.

In *Skinner & Sons' Co. v. Houghton*, 92 Md. 68, 48 A. 85 (1900), Judge Boyd said for the Court:

"A judgment obtained by a third person against the vendor between the time of the making of the contract and the payment of the purchase-money does not defeat or impair the equitable interest thus acquired by the vendee, nor is it a lien on land to affect the rights of such *cestui que trust*. *Hampson v. Edelen*, 2 H. & J. 64; *Valentine v. Seiss*, 79 Md. 190 [28 A. 892]." 92 Md. at 86, 48 A. at 87.

In *Hampson v. Edelen*, 2 H. & J. 64 (1807), to which the Court referred in *Stebbins-Anderson* and in *Skinner*, Chief Judge Chase said for the General Court:

"A contract for land, *bona fide* made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time. When the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in Chancery for a specific execution of the contract, if such conveyance is refused.

"A judgment obtained by a third person against the vendor, mesne the making the contract and the payment of the money, cannot defeat or impair the equitable interest thus acquired, nor is it a lien on the land to affect the right of such *cestui que trust*." 2 H. & J. at 66.

Appellants were vested with equitable title prior to the filing of the petition for a mechanics' lien. That petition could create no lien because a lien only comes into being upon court order. We are not obliged to consider whether the appellants were bona fide purchasers within the meaning of § 9–102(d) nor are we obliged to consider the effect of § 9–102(e) pertaining to notice because equitable title vested in the appellants prior to the docketing of the suit to establish the mechanics' liens.[1] Appellants' position as to the entry of a mechanics' lien is no worse than it would have been had a judgment been entered against the seller between the time of the execution of the contracts of sale and the passage of a deed. The fact that a mechanics' lien is a specific lien in rem and a judgment is a general lien makes no difference. The interest of the appellants in the land in question could not be reached by the mechanics' liens.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.

---

1. See *Talbott Lumber Co. v. Tymann*, 48 Md.App. 647, 428 A.2d 1229 (1981), for discussion relative to bona fide purchasers.