655 A.2d 64

**CARETTI, INC.**

v.

**The COLONNADE LIMITED PARTNERSHIP.**

**No. 1158, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 7, 1995.

---

132

J. Mitchell Kearney (Joseph W. Hovermill and Miles & Stockbridge, on the brief), Baltimore, for appellant.

Price O. Gielen (Nathan D. Adler and Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BISHOP and BLOOM, JJ.

WILNER, Chief Justice.

We have before us, for the second time, an attempt by a contractor who performed work on a project in Baltimore City known as the Colonnade to establish a mechanic's lien against a part of that project.[1] This appeal will be decided on a simple, fairly straightforward issue, but, like the earlier one, it spotlights a more serious problem arising from the interplay between the Mechanic's Lien Law and the Uniform Arbitra-

---

[1]. In *Tiber Construction Co. v. The Colonnade Limited Partnership,* 101 Md.App. 718, 738 (1994), we considered the claim of the general contractor, Tiber Construction Co.

tion Act. We commented on this problem several years ago in *McCormick v. 9690 Deerco Rd.*, 79 Md.App. 177, 556 A.2d 292 (1989), although, as explained later, our comments there were mere *dicta*.

## BACKGROUND

Prior to its rewriting in 1976, the Mechanic's Lien Law subjected each building erected or repaired to the extent of one-fourth of its value, and the land on which the building sat, to a lien for the payment of all debts for work done on or materials furnished for the building. Each such debt was declared to constitute a lien until the expiration of 180 days after the work was finished or the materials were furnished. Continuation of the lien thereafter was conditioned on the creditor filing a "claim" with the circuit court within that 180–day period. Mere filing of the claim continued the lien for an additional year, during which (1) the creditor could file an action to enforce the lien, or (2) the owner could file an action to compel the creditor to enforce the lien. If either action was filed, the lien remained in existence until the action was concluded; otherwise, it expired at the end of the year. The lien had priority over any other encumbrance attaching to the building or land subsequent to the commencement of the building. *See* Md.Code Real Prop. art. (1974 Vol.). §§ 9–101— 9–110.

In 1976, the Court of Appeals declared certain features of that law unconstitutional on the ground that, by permitting liens to be established before the owner could effectively challenge the claimant's right to the lien, it deprived owners of their property without due process of law. *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976). The Legislature immediately rewrote the law to meet the objections raised by the Court of Appeals.

Under the present law, a lien does not attach attach until the court establishes it. A person seeking a lien must file a petition with the court within the 180–day period, setting forth certain requisite information. If the court finds the

petition facially sufficient, it issues an order directing the owner to show cause why a lien should not attach. From the information and evidence it receives thereafter, the court has three immediate options:

(1) if the court finds that there is no genuine dispute of material fact and that a lien should attach as a matter of law, it will enter a final order establishing the lien, at least for the amount not in dispute;

(2) if the court finds that there is no genuine dispute of material fact and that, as a matter of law, the petitioner has failed to establish his right to a lien, it will enter a final order denying the lien; or

(3) if the court determines that (i) a lien should not attach, or should not attach in the amount claimed, as a matter of law, but (ii) there is probable cause to believe that the petitioner is entitled to a lien in some amount, it will enter an interlocutory order which, among other things, establishes the lien in the amount for which probable cause is found and assigns a date for trial, within six months, of all issues in dispute.

The major change made by the 1976 revision, of course, is that the claimant does not get his lien until the court establishes it, and the court may not establish it until, after considering any response by the owner to the claimant's petition, the court finds at least probable cause to believe that the claimant is entitled to a lien. That, in turn, may require consideration not only of whether the claimant has satisfied the statutory procedural prerequisites but of the nature and quality of the work allegedly performed or materials furnished, relevant contractual provisions, payments made to the claimant, and any defenses asserted to the claim.

This delay in the establishment of the lien—a by-product of the due process right enunciated in *Barry Properties*—creates, of itself, one level of disadvantage to the claimant; it allows other creditors of the owner to obtain a priority between the time the work is provided and the lien is established and, during that same interim, allows the owner to dispose of the property to bona fide purchasers free of any lien. This

aspect of the problem arises from Real Prop. art., § 9–102(d), which directs that property is not subject to a mechanic's lien if, prior to the establishment of the lien, legal title has been granted to a bona fide purchaser for value.

A second level of disadvantage, which derives from but exacerbates the first, is the overlay of the Uniform Arbitration Act or, when applicable, the Federal Arbitration Act. Those Acts, as judicially construed, make written agreements to arbitrate existing or future disputes enforceable in State courts. Md.Code Cts. & Jud.Proc. art., § 3–209 requires that a court stay any action involving an issue subject to arbitration if a petition seeking arbitration has been filed. Construction contracts often contain broad arbitration clauses, so it is not uncommon now for an owner, faced with a petition to establish a mechanic's lien, to seek to stay the action in favor of arbitrating the underlying dispute. The grant of such a motion, compelled by § 3–209, further extends the delay suring which other creditors may obtain an advantage over the claimant and during which the owner may convey the property to a bona fide purchaser for value.[2]

---

2. We note that in *National Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606, 650 A.2d 246 (1994), the Court of Appeals held that, once a claimant has filed a petition to establish a mechanic's lien, *lis pendens* applies to subsequent purchasers. Specifically, the Court declared that, "under our mechanic's lien law, should a petition for a mechanic's lien be stayed pending arbitration, [the claimant] will be protected to the extent that the filing of the lien petition will serve as notice to subsequent purchasers 'of the possibility of a lien being perfected.'" *Id.* at 616, 650 A.2d 246.

That protection, which § 9–102(e) itself provides, is helpful, but not complete. The claimant may still be subject to liens being established against the property during the interim by judgment creditors of the owners, or indeed perhaps by judgment creditors of subsequent purchasers. Moreover, the problem evident in this case still exists of the claimant having to join subsequent purchasers, and possibly their lien creditors as well, later in the proceeding, after the underlying dispute with the initial owner has already been resolved in arbitration. Those subsequent purchasers may have other defenses to assert; it is not at all clear that they could feasibly or forcibly be joined in the arbitration; and, if they are not, or could not be, joined in the arbitration, the question arises whether, and to what extent, they would be bound by the arbitration award.

This problem was first recognized in *Residential Indus. Loan Co. v. Weinberg,* 279 Md. 483, 369 A.2d 563, *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977). As noted, we were confronted with it in *McCormick v. 9690 Deerco Rd., supra,* 79 Md.App. 177, 556 A.2d 292, where a claimant contested the right of a court to stay proceedings on a petition to establish a mechanic's lien in favor of arbitration. Our actual decision in that case was that the order staying the judicial proceeding was not appealable, and we, in fact, dismissed the appeal. To "provide some guidance to the parties in concluding this case," however, we addressed McCormick's substantive argument that the court should have, in effect, ignored the arbitration law and followed only the procedures established in the mechanic's lien law.

Although sympathetic to McCormick's dilemma, we rejected that approach and held that the legislative direction in Cts. & Jud.Proc. art., § 3–209 to stay any action involving an issue subject to arbitration had to be followed. The approach offered by McCormick would have required the court to adjudicate the merits of the very disputes the parties had agreed to arbitrate. The remedy, we suggested, was either a legislative change in one or both of the statutes or the use of different language in the arbitration clause.

The problem is not a simple one; it has several facets. On the one hand, as we noted in *McCormick,* to require the court actually to adjudicate disputes that are subject to arbitration, in order to determine whether a lien should be established, would thoroughly frustrate the arbitration agreement. On the other, to defer consideration of even an interlocutory order establishing a lien could, as in this case, leave the claimant unprotected for a considerable period of time. Questions have arisen whether it is within the jurisdiction of the arbitrator to determine a claimant's entitlement to a lien and, if so, what remedy, if any, there is if the arbitrator refuses to resolve that issue, either preliminarily or in the final award. That, indeed, is what occurred in the *Tiber Construction* case.

■ We are not presented in this appeal, directly, with an occasion to revisit *McCormick*. We note only that (1) the discussion regarding the appropriate interplay between the two statutes was *dicta*, and (2) what we rejected was the argument that no part or aspect of the dispute was subject to arbitration—that the court should have proceeded solely in accordance with the Mechanic's Lien Law. We do not read *McCormick* as precluding the court from proceeding under Real Prop. art., § 9–106(b)(3) to hold a probable cause hearing, upon a finding of probable cause—which is far less than adjudicating the merits of the dispute—from establishing an interlocutory lien, and then staying trial on the merits in favor of arbitration.

We present this discussion by way of background, to provide a setting for the somewhat complex history of the issue actually before us.

## PROCEDURAL HISTORY

The Colonnade is an 11–story mixed-use building in Baltimore City consisting of nine floors of residential condominium units, 125 hotel rooms, retail space, and underground parking. On March 31, 1988, Tiber Construction Co., Inc. (Tiber) entered into a contract with the owner of the property, The Colonnade Limited Partnership (CLP), under which, for the sum of $26,828,700, Tiber agreed to construct the building. On May 16, 1988, Tiber entered into two subcontracts with appellant, Caretti, Inc. Under the first subcontract, Caretti agreed to furnish and install masonry and precast concrete for the sum of $2,658,404; under the second, Caretti agreed to furnish and install brick and precast pavers and site masonry walls for $308,433.

Caretti completed the work specified in the two subcontracts, as well as additional work requested by Tiber. With that additional work, the total amount due Caretti rose to $3,088,281, of which $124,401 was never paid.

Tiber itself remained unpaid by CLP. In February, 1991, it had filed a petition in the Circuit Court for Baltimore City to

establish a mechanic's lien but, upon motion by CLP, the court, in April, 1991, stayed that action in favor of arbitration. There was a general arbitration clause in the Tiber–CLP contract. On December 13, 1991, Caretti filed a petition in the Circuit Court for Baltimore City to establish a mechanic's lien against the property. Although there was no arbitration clause in the Caretti–Tiber subcontracts, there was a provision requiring that any dispute between them that involved the rights or duties of CLP was to be decided in accordance with the Contract Documents, which thus invoked the arbitration agreement between Tiber and CLP. Accordingly, *upon stipulation of the parties,* the court, on February 12, 1992, stayed further proceedings on Caretti's petition pending the arbitration between Tiber and CLP.

A number of other subcontractors joined in that arbitration and received favorable awards in July, 1992. Caretti decided not to join the arbitration, however, but simply to await its result. One of the issues in the arbitration was CLP's allegation that Caretti's work was defective and had caused undue delay. The final award, in favor of Tiber, was not rendered until May, 1993. In June, 1993, Caretti moved to lift the stay. In response to that motion, the court directed CLP to show cause why a lien should not be established. Instead of responding to that order, CLP filed for involuntary bankruptcy in the United Stated District Court, thereby causing further proceedings to be automatically stayed. That stay was not lifted until October, 1993, when the Federal Court dismissed the bankruptcy proceeding. Caretti then procured another show cause order, which CLP answered.

In its answer, filed on February 15, 1994, CLP pointed out that some of the residential condominium units had been sold and transferred to bona fide purchasers prior to the filing of the petition in December, 1991, and that other such units had similarly been sold during the interim. The owner asserted that "it would be improper for this Court to award a mechanic's lien with respect to those condominium units as to which legal title has passed, because the unit owners have not been joined as parties." It argued that the only property to which

a lien could attach was that still owned by CLP and that all of that property was subject to a mortgage which was in default and upon which foreclosure proceedings were pending.

The court conducted a hearing on Caretti's motion on February 25, 1994. Caretti apparently conceded that it had no right to a lien on units sold prior to the filing of its petition but claimed the right to a lien on all other property, including units sold after the filing of its petition. In response to Caretti's argument that those subsequent owners had notice of the petition and were therefore not bona fide purchasers, CLP pointed out that the court need not reach that issue because none of those owners had been joined as parties. The court expressed agreement with that defense but nonetheless determined that those units were not subject to a lien in any event. In its order of March 14, 1994, the court denied the lien on the residential units but established it, effective March 4, 1994, on the property still owned by CLP.

That partial victory was short-lived. On March 10, the property subjected to the lien was sold at a foreclosure sale and the proceeds proved insufficient to cover even the mortgage. Upon ratification of that sale, the court, on April 27, 1994, entered another order denying the petition to establish a lien against the property sold at the foreclosure sale. After the denial of Caretti's motions to revise and for reconsideration, this appeal ensued.

## DISCUSSION

The only properties Caretti currently seeks to subject to a lien are the condominium units sold after the filing of its petition. It has essentially conceded that it has no right to a lien on the units sold prior to the filing of the petition or to the property sold at the foreclosure sale.

In its initial brief, Caretti focused entirely on the circuit court's substantive conclusion that the units sold after the filing of the petition are not subject to a lien. That dispute centers principally on the proper construction of Real Prop. art., § 9–102(d) and (e). Section 9–102(d), as we have indicat-

ed, provides that a building (and the land on which it sits) may not be subjected to a mechanic's lien if, prior to the establishment of the lien, legal title has been granted to a bona fide purchaser for value. Section 9–102(e) states that the filing of a petition under § 9–105 "shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle." Caretti argues that, as the persons purchasing the condominium units after the mechanic's lien petition had been filed had notice of the possibility of a lien being perfected, they could not be bona fide purchasers for value, and, as a result, § 9–102(d) did not preclude a lien against those units.

We need not address that issue, for there is another, absolutely telling, impediment to Caretti's quest—the failure to join the unit owners as defendants in the case. Commendably, despite contrary assertions in its reply brief, Caretti conceded at oral argument that, because those unit owners had not been joined, the circuit court could not have established a lien against the units. *See* Md. Rule BG71.c.1., requiring that an action to establish a mechanic's lien be brought against the owner of the land against which the lien is sought to be established. Its position then, which it also asserted in its reply brief, was that, under Md. Rule 2–211(a), the court should have directed that those owners be made parties rather than simply denying the petition, and it asks that we remand the case so the court may do so.

Rule 2–211(a) provides:

"Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff."

■ We shall assume, for purposes of this appeal, that the circuit court, upon request of either Caretti or CLP, could have ordered that the unit owners be joined as defendants. That is not to say, however, that it was error for the court not to have done so in this case. For one thing, it does not appear that either Caretti or CLP sought that relief prior to the February 25, 1994 hearing on Caretti's motion to lift the stay and establish the lien, even though CLP had raised the issue of non-joinder in its response to the show cause order. For another, more than two years had elapsed since Caretti filed its petition against CLP. It knew that a major part of the project consisted of individual residential condominium units which CLP was likely to sell as quickly as possible. All of the sales ultimately were consummated by deeds recorded among the public land records. Surely, Caretti was on notice that these purchasers were essential parties, for, from the very beginning, Caretti sought to have its lien attached to all of the residential units.

■ Rule 2-211, like its Federal counterpart, Fed.R.Civ.P. 19, is forward-looking. It provides for the compulsory joinder of necessary parties so that the case can proceed efficiently with respect to all persons having a cognizable interest in the matter and, at the end, the court can grant complete relief. To insist on joining indispensable parties after the case is essentially over hardly comports with that forward-looking efficiency. The Federal courts, interpreting Fed.R.Civ.P. 19 in light of general equitable principles, have declined to impose such a requirement.

In *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432 (5th Cir.1992), Judwin had sued U.S. Fire for failure to defend Judwin properly in a separate tort action and for failure to exercise good faith and settle with the plaintiffs in

that action. It lost the case on summary judgment and appealed; in the appellate court, it asserted, for the first time, that it had failed to join certain necessary parties, and it moved to dismiss the appeal. The court denied the motion, noting that Judwin, as the plaintiff, had control of the suit and chose which parties to sue, that it was on notice early that indispensable parties had not been joined, and that it simply decided not to join them. At 434, the Court held:

"Such a decision should not be the basis for an offensive use to Rule 19 in this Court. Judwin's long delay in raising this issue should not prejudice USF. Additionally, this Court finds no authority for the offensive use of Rule 19 which would allow a plaintiff to negate an adverse ruling because of its own failure to join all indispensable parties."

A similar result occurred in *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122 (3d Cir.1988). The plaintiff there had recovered a judgment against the appellee but appealed an order denying her petition for mandamus directing the appellee to pay the judgment. In the appeal, the appellee sought a remand under Fed.R.Civ.P. 19 on the ground that the plaintiff had failed to join a party who might also be liable for the judgment. The appellate court rejected that argument, concluding that appellee's Rule 19 claim was "barred by the equitable principle of laches here, where BLaST itself failed to join [the missing party] despite ample opportunity." *Id.* at 125 n. 6.

By the time this case came before the court in February, 1995, the only properties that likely could be subjected to a lien were the condominium units sold after the petition was filed. Caretti was aware, by then, that the non-residential property was due to be sold at a foreclosure sale and that the proceeds were not likely even to cover the mortgage balance. No meaningful relief could therefore have been granted at that point against CLP, for it then owned no property to which a lien could effectively attach. The *only* parties in interest then, other than Caretti, were the unit owners. For the court to have ordered them joined as defendants at that point, however, or for us to require that now, would be

tantamount to starting the entire case over. Much—perhaps everything—that had already been litigated with respect to Caretti and CLP would have to be relitigated; the new defendants would be entitled to discovery and an opportunity to raise any legitimate defense to Caretti's claim. We do not believe that Rule 2–211 should be used in such an offensive manner.

Under the circumstances noted, we find no error in the court's orders denying the lien.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.