841 A.2d 413

**REDLAND GENSTAR, INC. et al.**

v.

**Hardat MAHASE et al.**

**No. 3071, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Feb. 3, 2004.

Robert L. Flynn (Bouland & Bruch, L.L.C., on the brief), Severna Park, for appellant.

Gerald W. Heller (Jessica N. Drexler, Linowes & Blocher, L.L.P., on the brief), Bethesda, for appellee.

Panel MURPHY, C.J., and JAMES R. EYLER and BARBERA, JJ.

JAMES R. EYLER, J.

This case arises from the aftermath and interplay of three prior proceedings in the Circuit Court for Montgomery Coun-

ty, all involving the same real property, located in Olney, Maryland (the Property). Specifically, the Property was subject to (1) a foreclosure proceeding; (2) a mechanic's lien action; and (3) a complaint seeking to quiet title. This appeal stems from the quiet title action, whereby the present owners of the Property, Hardat and Timini Mahase, Margarita and Anri Petrosyan, and Sam Kanterman and Nataly Stolper, appellees, were granted summary judgment, quieting title to the Property in their favor.[1]

Redland Genstar, Inc., appellant, is an unpaid supplier of goods and materials to the Property, which obtained a mechanic's lien against the Property after the foreclosure sale, but prior to the sale of the Property to appellees.[2] Appellant claims that the circuit court erred in granting summary judgment in favor of appellees because, as a mechanic's lien claimant, it held a subordinate interest in the Property and was entitled to notice of the foreclosure sale. Because no such notice was given, the foreclosure sale did not properly pass good title in the Property to appellees. Perceiving no reversible error, we shall affirm the judgment of the circuit court.

## Factual Background

### The Foreclosure Sale

On March 18, 1998, a foreclosure action was filed against the Property, which was then owned by Brimar Development, Inc.

---

1. Following the foreclosure sale, the property in question was split up and sold in individual lots to each of the appellees. Specifically, Hardat and Timini Mahase own 3502 Tavenner Court, Olney, MD 20832; Margarita and Anri Petrosyan own 3505 Tavenner Court, Olney, MD 20832; and Sam Kanterman and Nataly Stolper own 3504 Tavenner Court, Olney, MD 20832, respectively. Although appellees presently own each lot individually, because the properties were held as one during the relevant time in question, and because the issues in this case affect the properties in the exact same fashion, for ease of reference, the properties in question will be referred to collectively as "the Property."

2. David Wayne Asaki, trustee, is the other appellant in this case. Because Mr. Asaki was not technically involved in any of the events relevant to this appeal, we will use appellant in the singular to refer to Redland Genstar.

(Brimar), in the Circuit Court for Montgomery County. The Property was sold at a foreclosure sale on November 4, 1998.[3]

Pursuant to an order dated February 10, 1999, Design Tech Builders, Inc. (DTB) became the substituted purchaser of the Property sold at foreclosure. This sale received final ratification by the court on May 24, 1999, and title was vested in DTB, pursuant to a trustee's deed recorded on April 14, 1999. Thereafter, DTB transferred and sold lots to each of the appellees.[4] It is undisputed that, prior to the sale, appellant was given no actual notice of the foreclosure proceedings.

## The Mechanic's Lien

Following the foreclosure filing, but prior to the foreclosure sale, on June 15, 1998, appellant filed a petition in the Circuit Court for Montgomery County, seeking to establish a mechanic's lien upon the Property.[5] A show cause hearing for the interlocutory lien was scheduled for August 5, 1998. Because the parties in interest failed to show up in court at the required date, however, no lien was entered.

On May 12, 1999, appellant filed a motion for final lien in the circuit court. On May 24, 1999, the same day as the

---

**3.** After the foreclosure sale was held, the trustee realized that some of the properties were inadvertently omitted from the description of the parcels being sold. The trustee attempted to add another lot after the ratification of the sale on May 24, 1999, by way of a supplemental order. This attempt was unsuccessful, however, and on June 8, 2000, a substitute trustee requested that the entire sale be set aside. The propriety of the foreclosure sale was thereafter litigated and resolved. We do not have the records relating to the mechanic's lien action and the foreclosure action. The information contained in the record of the quiet title action is incomplete, but it appears we have the information necessary to resolve the issue before us.

**4.** The Mahases recorded their deed to 3502 Tavenner Court on July 7, 2000; Kanterman and Stolper recorded their deed to 3504 Tavenner Court on July 19, 2000; and the Petrosyans recorded their deed to 3505 Tavenner Court on August 3, 2000.

**5.** In this filing, and in other filings regarding the mechanic's lien, appellant incorrectly asserted that Brimar was the sole record owner of the Property. In fact, because of the foreclosure sale, Brimar was no longer the record owner, but rather, DTB owned the Property.

foreclosure sale ratification, an order granting the final mechanic's lien was signed, directing the sale of the property. This order was docketed on June 4, 1999.[6]

Pursuant to the final mechanic's lien order, a sale of the Property was scheduled for March 1, 2001. This sale was halted when appellant learned of the foreclosure and eventual sale to appellees.[7] The parties agreed that a quiet title action was the best way to resolve the Property's ownership issues.

## The Quiet Title Action

On June 6, 2002, appellees filed suit in the Circuit Court for Montgomery County, seeking to quiet title in the Property and seeking a declaratory judgment and injunctive relief. The quiet title suit was resolved on cross motions for summary judgment.

On October 10, 2002, the court denied appellants' motion for summary judgment without a hearing. On January 8, 2003, a hearing was held on appellees' cross-motion for summary judgment. The court held that when the property was conveyed at the foreclosure sale on November 4, 1998, "there was no established docketed subordinate interest that prevented th[e] ratification of the foreclosure which had taken place." Moreover, the court found that the statutory and case law surrounding this case did not require that appellant receive notice of the foreclosure sale. Thus, on January 31, 2003, the court granted appellees' motion and declared that appellant's mechanic's lien was null and void with respect to the Property. This order was entered February 5, 2003.

Thereafter, appellant filed a timely appeal to this Court.

---

6. Appellant Asaki was substituted as trustee in a motion filed November 29, 2000, and granted on December 21, 2000.

7. In an affidavit filed in support of its position, appellant's counsel claims that neither he nor his client was aware of the foreclosure sale until he was contacted by appellees' counsel in February of 2001.

## Contentions of the Parties

Appellant claims that the circuit court erred in granting appellees' summary judgment motion, holding that appellant was not a holder of a subordinate interest or a person otherwise entitled to notice of the foreclosure sale. Appellant argues that, absent such notice, good title did not pass to appellees through the foreclosure sale. Appellant claims that even though the mechanic's lien was not in existence at the time of sale, appellant still maintained a subordinate interest in the property and, therefore, had a right to notice of the foreclosure. As such, appellant requests that the judgment of the circuit court be reversed.

In response, appellees argue that the circuit court correctly held that appellant was not a subordinate lien holder at the time of the foreclosure sale and, therefore, was not entitled to notice of the sale. Alternatively, appellees claim that appellant is time-barred from claiming it was entitled to notice because the statute of limitations requires that such a claim be made within three years of the date of the order ratifying the foreclosure sale, in this case, May 24, 1999.

We decline to address appellees' limitations argument because we find that the circuit court correctly held that appellant was not a subordinate interest holder at the time of the foreclosure sale and, therefore, was not entitled to notice of the sale.

## Discussion

█ Appellant asserts that it was entitled to notice of the foreclosure sale because it held a subordinate interest in the Property. Because no such notice was ever received, appellant claims that the foreclosure sale failed to properly pass title to appellees, and there should be a resale of the Property under the foreclosure instruments.

"[A]n appellate court's review of the grant of summary judgment involves the determination whether a dispute of material fact exists, and 'whether the trial court was legally

correct.' " *Underwood–Gary v. Mathews*, 366 Md. 660, 685, 785 A.2d 708 (2001) (citations omitted); *see also* Md. Rule 2–501.

Maryland Rule 14–206(b), in pertinent part, provides the following regarding notice prior to foreclosure sale:

> (2) **By Certified and First Class Mail.**
>
> (A) Before making a sale of the property, the person authorized to make the sale shall send notice of the time, place and terms of the sale by certified mail and by first class mail to the last know address of (i) the debtor, (ii) the record owner of the property, and (iii) the holder of any subordinate interest in the property subject to the lien. (B) The notice of the sale shall be sent not more than 30 days and not less than ten days before the date of the sale to all such persons whose identity and address are actually known to the person authorized to make the sale or are reasonably ascertainable from documents recorded, indexed, and available for public inspection 30 days before the date of sale.
>
> (3) **Other notice.** If the person authorized to make the sale receives actual notice at any time before the sale is held that there is a person holding a subordinate interest in the property and if the interest holder's identity and address are reasonably ascertainable, the person authorized to make the sale shall give notice of the time, place, and terms of the sale to the interest holder as promptly as reasonably practicable in any manner, including by telephone or electronic transmission, that is reasonably calculated to apprise the interest holder of the sale.
> * * *

Similarly, Md.Code, (1972, 2002 Repl.Vol.), § 7–105(c)(2) of the Real Property Article provides that "[t]he person authorized to make a sale in an action to foreclose a mortgage or deed of trust shall give written notice of any proposed foreclosure sale to the holder of any subordinate mortgage, deed of trust, or other subordinate interest, including a judgment.…" [8]

---

8. Section 7–105 also provides that notice need not be given to certain subordinate interest holders when either the existence, the address, or

Appellant argues that when it filed a mechanic's lien action on June 15, 1998, it was thereafter entitled to notice of any foreclosure action as a subordinate interest holder, under both the Maryland Rules and the Maryland Code.

▇▇▇▇ Simply filing a mechanic's lien action, however, did not create a subordinate interest in the Property. A mechanic's lien does not come into effect "until the passage of a court order establishing a lien." *Himmighoefer v. Medallion Industries, Inc.,* 302 Md. 270, 278, 487 A.2d 282 (1985). An order is required to create the lien, making the land in question "liable by statute to be seized and sold on execution." *Id.* Moreover, no lien exists until after the owners of the property in question are provided with notice and an opportunity for a hearing. *Id.* (quoting *Barry Properties v. Fick Bros.,* 277 Md. 15, 37, n. 12, 353 A.2d 222 (1976)).

▇▇▇ At the time of the foreclosure sale, on November 4, 1998, appellant had only filed for a mechanic's lien and was not yet a lien holder. Appellant's lien was granted on May 24, 1999, the same day the foreclosure sale was finalized, and not docketed until June 4, 1999. "The day of sale ... [marks] the close of the period in which any creditor could acquire a lien upon" the debtor's interest in the land. *IA Construction Corp. v. Carney,* 341 Md. 703, 711, 672 A.2d 650 (1996). The earliest date to which appellant could have had an actual mechanic's lien on the Property was May 24, 1999, many months after the foreclosure sale on November 4, 1998. Thus, appellant is precluded from asserting an interest in the Property based solely on the existence of a lien.

Nevertheless, appellant claims that even if it did not have an actual lien at the time of the foreclosure sale, it still had a "protected property interest" and therefore, was entitled to notice of the proceedings. "To be successful in an action

---

the identity of the interest holder is not reasonably ascertainable. Md.Code, § 7-105(c)(5). Similarly, if the subordinate interest is created, recorded, or filed too close to date of foreclosure sale, the subordinate interest holder need not be notified of the foreclosure sale. *Id.* None of these exemptions are applicable in the instant case.

alleging denial of procedural due process in violation of a property interest, a plaintiff must demonstrate that he had a protected property interest, that he was deprived of that interest, and that he was afforded less process than was due." *Samuels v. Tschechtelin,* 135 Md.App. 483, 524, 763 A.2d 209 (2000).

In support of its assertion, appellant cites *Knapp v. Smethurst,* 139 Md.App. 676, 703–06, 779 A.2d 970 (2001), where this Court provided an in depth discussion of the procedural due process rights afforded individuals with protected property rights. The seminal issue in *Knapp,* as it is in the instant case, was whether there was a legally protected interest in the property at issue, giving rise to the due process protections of notice and opportunity to be heard. *Id.* at 709, 779 A.2d 970. In *Knapp,* we concluded that, despite having no ownership interest in the property that was foreclosed upon, because the fate of appellants' rights in property owned by them hinged on the foreclosure sale, due process required that they were entitled to notice of the proceedings and an opportunity to be heard. *Id.* at 715, 779 A.2d 970. *Knapp* was an unusual situation because appellants' property served as collateral for the secured loan that was foreclosed. The instant case is distinguishable from *Knapp* because the property owners in *Knapp* had an actual interest in the foreclosed property in that it adversely affected ownership rights to their property. 139 Md.App. at 713–14, 779 A.2d 970. Appellant had no actual ownership interest in the Property at the time of the foreclosure sale that was adversely affected by the sale.

There is no authority, statutory or otherwise, for the proposition that filing for a mechanic's lien creates an interest in the property sought to be made the subject of the lien. The Supreme Court has explained that, in order to have a property interest, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). It is well-settled that not "every 'benefit' conferred by statute creates a property right protected by procedural due process requirements."

*Riger v. L & B Ltd. Partnership,* 278 Md. 281, 293, 363 A.2d 481 (1976). While the mechanic's lien statute may have outlined a possible remedy for appellant, simply filing suit did not create a property interest in favor of appellant such that it could claim a legitimate entitlement to the Property.

Moreover, at the time of foreclosure sale, it was uncertain whether a lien would ever be established against the Property. A "claimant does not get his lien until the court establishes it, and the court may not establish it until, after considering any response by the owner to the claimant's petition, the court finds at least probable cause to believe that the claimant is entitled to a lien." *Caretti v. Colonnade Ltd. Partnership,* 104 Md.App. 131, 135, 655 A.2d 64 (1995). Until the court established a lien, it was unknown whether appellant's expected interest in the Property would ever come to fruition. Thus, despite the fact that appellant may have had an expectancy, at the time of the foreclosure sale he did not have any legally protected property right that would entitle him to the benefit of due process notice.

Under Md. Rule 14–206 and § 7–105 of the Real Property Article, there is no requirement that notice be provided to individuals with a potential future interest in the foreclosed property—only individuals with actual subordinate interests are entitled to notice. Because appellant was not entitled to notice of the foreclosure, and because appellant's subsequently acquired interest in the property was effectively extinguished by ratification of the foreclosure sale, we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**