494 A.2d 988

**E.L. GARDNER, INC.**

v.

**BOWIE JOINT VENTURE.**

**No. 1605, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 12, 1985.

Certiorari Denied Oct. 21, 1985.

M. Evelyn Spurgin, Annapolis (Michael P. Darrow and Hillman, Brown & Darrow, Annapolis, on brief), for appellant.

Yale L. Goldberg, Rockville (Goldberg & Sinrod, Rockville, on brief), for appellee.

Argued before MOYLAN, WILNER and KARWACKI, JJ.

WILNER, Judge.

This is a mechanic's lien case, growing out of additions made to an existing shopping center in Prince George's County. Appellant supplied concrete to a subcontractor on the job; when it wasn't paid the amount due (alleged to be $33,178), it filed in the Circuit Court for Prince George's County a Complaint to establish and enforce a mechanic's lien in that amount.

Acting pursuant to Md.Code Ann. Real Prop. art., § 9–106(a) and Md.Rule BG 73, the court issued an order directing appellee, the owner of the property, to show cause why a lien should not be established. Appellee responded to the order, raising the sole defense that the value of the additions to which appellant contributed was less than 25% of the value of the total improvements to the land before the new construction. After an evidentiary hearing on the complaint and appellee's response, the court, in an order dated October 29, 1984, agreed with appellee that the prime contract "does not equate to twenty-five percent of the value of the project and for that reason, the Court is without jurisdiction to entertain this lien...." On that basis, the court dismissed the complaint.

In this appeal, appellant complains:

"I.  The trial judge erred when he failed to issue an interlocutory order and set the case for trial because a genuine dispute as to material facts exists.

II.  The trial judge erred when he used the value of the project after improvements to find that the contract does not equate to twenty-five percent of the value of the project.

III.  The trial judge erred when he subtracted the contract price from the value of the project after improvements to find that the contract does not equate to twenty-five percent of the value of the project."

We think that appellant's first complaint has merit, and that the case must be remanded for further proceedings. For the guidance of the court, however, we shall address the other two issues as they may well arise again in the course of the proceedings on remand.

Md.Code Ann. Real Prop. art., § 9–102(a) provides, in relevant part that

"Every building erected . . . repaired, rebuilt, or improved to the extent of 25 percent of its value is subject to establishment of a lien in accordance with this subtitle for payment of all debts . . . contracted for work done for or about the building and for materials furnished for or about the building. . . ."

The procedure for actually acquiring the lien authorized by § 9–102(a) is set forth in §§ 9–104—9–107, much of which is tracked almost verbatim in Md.Rules BG 71–73. The proceeding is commenced by a petition or complaint setting forth certain required information about the parties, the property, and the basis of the claim. Sec. 9–105; Rule BG 71. If, upon a review of the petition and any exhibits appended to it, the court determines, preliminarily, that a lien should attach, it must issue an order directing the owner to show cause why the requested lien should not attach. Sec. 9–106(a); Rule BG 73 a. That was done by the court.

■ Upon the owner's response (or upon his failure to respond within the time set by the show cause order), the court must review the matter again and take one of three actions. If the evidence then before it shows that "there is no genuine dispute as to any material fact and that the lien should attach [in whole or in part] as a matter of law," the court must enter a final order establishing the lien, at least for that part of the claim not in dispute. Sec. 9–106(b)(1); Rule BG 73 d 1(a). If, conversely, the evidence shows that "there is no genuine dispute as to any material fact and that the petitioner failed to establish his right to a lien as a matter of law, then a final order shall be entered denying the lien for cause shown." Sec. 9–106(b)(2); Rule BG 73 d 1(b).

If, however, the court determines from the evidence before it "that the lien should not attach, or should not attach in the amount claimed, as a matter of law, by any final order, but that there is probable cause to believe the petitioner is entitled to a lien," the court must enter an interlocutory order that, among other things, establishes the lien in the amount for which probable cause is found and assigns a date "for the trial of all the matters at issue in the action...." Sec. 9–106(b)(3); *see also* Rule BG 73 d 2. In that event, "[u]ntil a final order is entered either establishing or denying the lien, the action shall proceed to trial on all matters at issue, as in the case of any other proceedings in equity." Sec. 9–106(d); *see also* Rule BG 73 d 5.

In essence, the sole function of the court at that stage of the proceeding is to determine whether there is a genuine dispute of material fact and, if not, whether the claimant is, or is not, entitled to a lien as a matter of law. As we pointed out in *Tyson v. Masten Lumber & Supply*, 44 Md.App. 293, 303, 408 A.2d 1051 (1979), *cert. denied* 287 Md. 758 (1980), the court is then "in the same position as a judge passing upon a motion for summary judgment" and it is "not justified in weighing the evidence and adjudicating the case...."

Not every dispute of fact will suffice to forestall a final order, of course. The dispute, as in the case of a summary judgment proceeding, must be material—*i.e.*, the right of the claimant to the lien will depend, at least in part, on how that dispute is resolved. If there is a factual dispute of that nature, the court must ordinarily proceed in accordance with § 9–106(b)(3) and Rule BG 73 d 2.[1]

■ There was, of course, an issue in dispute between the parties—whether the value of the additions to the shopping center equaled or exceeded 25% of the value of the preexisting improvements. As there was no real dispute about the numerator of the fraction—the total contract price for the improvements was conceded to be $1,939,087—the focus was on the value of the preexisting improvements.

Appellee contended that the preexisting improvements had a value of $9,500,000. To support that contention, it put into evidence an affidavit of an appraiser for Maryland National Bank appraising the value of the land and improvements *after* the new construction as $13,590,000, of which $2,000,000 was for the land and $11,590,000 was for the improvements. To obtain the value of the improvements *before* the new construction, appellee urged that the court simply deduct from the $11,590,000 the construction price of $1,939,087, leaving a pre-construction value of

---

1. We say that the court must "ordinarily" proceed in accordance with § 9–106(b)(3) and Rule BG 73 d 2 because there is a limited circumstance in which a fourth option is available, *i.e.*, where the court is unable to determine the issue one way or the other as a matter of law, and is also unable to find the requisite probable cause. Rule BG 73 d 3 addresses that problem. It states: "If no final or interlocutory order is granted under subsections 1 and 2, the court shall enter an order that the petition for lien be dismissed unless the petitioner, within 30 days thereafter, files a written request that the petition for lien be assigned for trial." This would appear to be in the nature of an order *nisi*, and we assume that, if the petitioner does indeed file the written request, the matter will thereafter proceed under § 9–106(b)(3) and Rule BG 73 d 2.

That is not the situation before us now. The court issued a final order under § 9–106(b)(2) and Rule BG 73 d 1(b); it did not purport to act under Rule BG 73 d 3.

$9,650,913, which it somehow then rounded off to $9,500,-000. Even at that lower figure, more favorable to appellant, the ratio of the new construction to the value of the preexisting improvements would be only 20.4%.

To establish a lower value of the preexisting improvements, and thus a higher ratio, appellant produced the testimony of Richard L. Stefan, an assessor employed by the State Department of Assessments and Taxation. Mr. Stefan had appraised the property for assessment purposes. He stated, in that regard, that he estimated the value of the property for 1984 tax purposes to be $9,498,350, of which $2,644,770 was attributable to the land, leaving $6,850,358 attributable to the improvements, *that the owner (appellee) objected to that estimate,* and that, after considering additional information, Stefan reduced the assessment on the improvements to $5,875,480. If the initial value ($6,850,358) is considered, the ratio would be 28.3%; if the lower, final value is considered, the ratio would be 33%. In either case, of course, the threshold criterion set by § 9–102(a) would be met.

Appellee argues in response that Mr. Stefan's testimony was inadmissible and should not have been considered by the court.

In *Baltimore City v. Himmel,* 135 Md. 65, 75–76, 107 A. 522 (1919), the Court stated, "[t]he general rule is well settled that the assessment of property made by public authorities for purposes of taxation is not admissible in condemnation proceedings...." In *Gravenstine v. Gravenstine,* 58 Md.App. 158, 172, 472 A.2d 1001 (1984), we expanded that concept, stating the "general rule" to be "that the value of the property cannot be proven by assessments made for tax purposes." In making that statement, we relied not only on *Himmel* but also on a collection of out-of-State cases reviewed in Annot., *Valuation for taxation purposes as admissible to show value for other purposes,* 39 A.L.R.2d 209 and Later Case Service, which supports the broader statement. Indeed, in § 2 of the

original annotation, 39 A.L.R.2d at 212, the statement is made that "generally, in and of itself, assessed valuation is not admissible as evidence of valuation for purposes other than taxation." In a footnote, the annotator adds that, "[i]n most instances, the rule of exclusion of the evidence is not stated so as to restrict its application to the kind of proceeding or issue immediately involved."

Under that rule, Mr. Stefan's testimony as to his own valuation of the property was, as appellee asserts, inadmissible. There is an important corollary to that rule, however. Although the assessor's estimate of value cannot be received, an estimate, even for tax purposes, made by the owner *is* admissible, as an admission. This principle was first applied in Maryland in *Gossage v. Phil, B. & W.R. Co.*, 101 Md. 698, 61 A. 692 (1905). The issue there was the value of the plaintiff's boat, allegedly destroyed through the negligence of the defendant. The Court recited, and concluded, at 701–02, 61 A. 692:

> "The appellee then offered to prove the assessment value of the vessel as it appears upon the books of the County Commissioners. Upon objection being made by the appellant, the Court admitted the testimony on the assurance of the appellee that he would follow it up by showing that the appellant had appeared before the commissioners and asked for a reduction of the assessment, stating that the amount of the assessment was more than the cost of the boat or more than it was worth, and also stated the amount he paid for the boat, and thereupon the assessment was reduced to the amount as it now stands.
>
> This testimony was objected to by the appellant, but was admitted, and this constitutes the appellant's seventh exception. The testimony objected to was in substance an admission of the appellant. It amounted to a declaration as to the value of the boat. It was therefore admissible as tending to prove a fact adverse to the appellant's right to maintain the suit."

The principle was applied again, in a condemnation case, in *Baltimore City v. Himmel, supra,* 135 Md. at 76, 107 A.

522.   Directly after declaring the inadmissibility of an assessor's valuation, the Court concluded that it was equally well settled, as a general proposition, that a return made by the owner to the assessor showing the value of the property "is admissible both to impeach the owner and as *independent evidence of value.* " (Emphasis in original.) *See also Redman v. United States*, 136 F.2d 203 (4th Cir.1943); Annot., *supra*, 39 A.L.R.2d at 212–14.

Here, there was no express, affirmative declaration of value by the owner to the assessor.  But there was an indirect one that, for purposes of determining whether there was a dispute of material fact, has equal significance. As in *Gossage, supra*, appellee protested Mr. Stefan's initial assessment of $6,850,358, claiming, by necessary implication, that that amount exceeded the fair market value of the improvements as they then existed.  While that protest may or may not equate to an admission of the lower amount ultimately determined by the assessor, it certainly can be considered as an admission that the value was less than the $6,850,358 initially determined by the assessor.  That admission, as the *Himmel* Court made clear, constitutes "independent evidence of value."

It is therefore apparent that there was a genuine dispute of material fact upon the resolution of which appellant's right to a lien depended.  For the reasons noted above, the court should not have undertaken to determine that fact in the proceeding then before it.  If the lower value of $6,850,-358 were to be credited, there would necessarily have been probable cause to believe that a lien should attach.  Accordingly, the court was obliged to enter an interlocutory order pursuant to § 9–106(b)(3) and to have proceeded thereafter in accordance with that section.  We shall remand for that purpose.

■   As we observed earlier, appellant also complains about the arithmetic method by which appellee (and the court) reached the conclusion that the preexisting improvements were worth $9,500,000.  It argues that the appraiser,

in effect, valued the property *after* the new construction, which was inappropriate, and that the court could not properly take that valuation and determine the value of the preexisting improvements by simply deducting the contract price for the new construction.

We see no legal error in that approach. It may be, as appellant suggests, that there are better or more precise ways to determine the value of the pre-construction improvements, but that does not preclude the one used. Owners frequently have no occasion to have their existing improvements appraised before embarking on new construction. When faced with the need subsequently to establish the pre-construction value, they may be forced to work backward—to determine the value with the construction and then deduct the cost of construction (and such other amounts, as, for example, inflation, as may be appropriate). We see nothing inherently wrong with that process; if the particular application of it is in some way flawed, that of course may affect either the admissibility of the evidence or the weight to be given to it, depending on the flaw.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; APPELLEE TO PAY THE COSTS.