894 A.2d 609

COTTAGE CITY MENNONITE CHURCH, INC.

v.

JAS TRUCKING, INC.

No. 618, Sept. Term, 2005.

Court of Special Appeals of Maryland.

March 6, 2006.

Timothy P. Leahy of Bowie, for appellant.

Michael P. Darrow (Hillman, Brown & Darrow, PA on the brief), Annapolis, for appellee.

Argued before DAVIS, DEBORAH S. EYLER, and BARBERA, JJ.

DAVIS, J.

Cottage City Mennonite Church, Inc., appellant, appeals from a Final Order Establishing Mechanic's Lien Pursuant to Arbitration Award granted against it and in favor of JAS Trucking, Inc., appellee, by the Circuit Court for Prince George's County on March 28, 2005 (Martin, J.). Appellant presents three questions for our review:

1. Did the Trial Court abuse its discretion, commit plain legal error, and deny Appellant due process of law by entering a Final Order against Appellant, a non-party to an arbitration, without giving the Appellant an opportunity to present its independent defenses to the Mechanic's Lien at statutorily prescribed hearings?

2. Did the Trial Court abuse its discretion in entering a Final Order, and refusing to vacate that Final Order, without having considered Appellant's timely filed Response to [appellee's] Motion for Entry of Final Order Establishing Mechanic's Lien Pursuant to Arbitration Award?

3. Did the Trial Court abuse its discretion in entering a lien in this Case based on an arbitration award that was the basis for an un-enrolled judgment in a second Circuit Court case?

We answer all three questions in the negative. Accordingly, we shall affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

Appellee entered into a subcontractor-prime contractor agreement with Maryland Construction Inc. ("MCI"), to construct a church building for appellant on appellant's land located in Lanham, Maryland. Appellee agreed to perform

"trucking, grading and excavating services [as] required by the prime contract." As the construction progressed, disputes arose among the three parties; appellee and MCI disagreed about the manner in which appellee was operating under its subcontract, while appellant blamed appellee for destruction of a barn and other items on the property.

The disputes led appellee to file a Mechanic's Lien cause of action against appellant on April 8, 2004, seeking a lien of $49,185 .00 for the work it had performed. The court issued a Show Cause Order dated April 27, 2004, ordering appellant to "show cause by filing a counter-affidavit or a verified answer on or before the 27th day of May, 2004, why a lien for the amount claimed should not attach upon the land. . . ." The parties stipulated to postponing the show cause hearing and filed a Consent Motion to Continue on May 25, 2004, which the Court (Smith, J.) granted.

On that same date, appellant also filed a Motion to Compel Mediation and/or Arbitration and to Dismiss Complaint. Appellant claimed that there was an express agreement to arbitrate contained within the "controlling contractual language." Appellant averred that the subcontract between appellee and MCI "expressly incorporate[d] the Prime Contract between MCI and [appellant]," which stated:

The Subcontract documents consist of (1) this Agreement; (2) the Prime Contract and other Contract Documents enumerated therein; . . . These form the Subcontract and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein.

With respect to resolving disputes, the contract further provided:

Any claim arising out of or related to this Subcontract, . . . shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation . . . that in addition to and prior to arbitration, the parties shall endeavourer [sic] to settle disputes by mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association . . .

Appellant contended that, because appellee failed to mediate the dispute, it should have been barred from seeking arbitration. In addition, according to appellant, appellee was not entitled to a mechanic's lien because it agreed to arbitrate disputes. As a result, appellant "demand[ed] that [appellee] honor the terms of the contract and mediate and/or arbitrate this dispute," and requested the court to dismiss the mechanic's lien case. The Motion included a subheading titled "Verification," and signed by Douglas C. Winger, Construction Manager for MCI, which stated, "I solemnly swear under penalty of perjury that the contents of the foregoing are true to the best of my knowledge, information and belief." On June 1, 2004, appellee filed for arbitration against MCI demanding payment for its work.

Appellant and appellee filed a Consent Motion to Stay Proceedings associated with the mechanic's lien case on June 9, 2004. The parties stated in their motion that they had "agreed that these [] proceedings should be stayed pending the outcome of [appellee's] pending arbitration [claim against Prime Contractor MCI.]" In an Order of Court dated June 16, 2004, the court ordered that the mechanic's lien matter be stayed and removed the matter from the docket, "pending the outcome of arbitration between the parties and [MCI] on the merits of [appellee's] Complaint."

MCI submitted a Counterclaim in opposition to appellant's claim for arbitration. The arbitrator denied MCI's counterclaim and, as a result, MCI was precluded from presenting much of its opposing evidence. Appellee presented its claim to the Construction Arbitration Tribunal over three hearing dates in October and November of 2004. In the Award of Arbitrator, dated December 30, 2004, the arbitrator found:

It is clear from the detailed drafting of the contract that [MCI] was prepared to accept an efficient "in and out" effort of less than 60 days on substantially [appellee's] guarded terms. In essence, [appellee's] scope of work here is generally SOP for the industry and if not explicitly modified, there may be some risk to the other party, unless this risk can be transferred to the owner. While the

primary question here would appear to be whether [MCI's] interpretation of borrow pit trumps [appellee's] exclusion for undercutting and/or backfilling below the design subgrade, the delay in resolution of this and other matters hindering the continuous operations of [appellee,] had a more significant effect on the project than the core trench issue itself. Where the parties anticipated a short and unobstructed operation, the project became fragmented into a phased effort. In mid-November, 2003, when [appellee] should have been off the job a month earlier, [MCI] was both advising and demanding where [appellee] could work even though there was no prior contract prohibition why any work should still be undone. Prior to this time, absent the core trench issue, there is lacking any substantive correspondence or daily report comments reflecting a failure on the part of [appellee] to perform. Absent the barn issue, had the actions, or lack of action by [appellee] diminished [appellee's] application for payment? As to the core trench issue, working under the direction of [MCI], [appellee] maintained their reservation of rights in this matter and it has been determined here that [appellee's] position has prevailed. Given the importance of this issue and [appellee's] explicit superseding contract exception here, it was incumbent upon [MCI], as drafter of the agreement, to clarify this issue so that the risk to [appellee] would be exposed for whatever consideration. Having prevailed on the core trench issue, the delay and subsequent consequence of this matter are not chargeable to [appellee]. The unresolved barn issue is significant only as to an amount possibly due [MCI] in excess of the insurance proceeds. While [MCI's] letter of March 24, 2004 lists a barn claim against [appellee's] balance of $57,887, [MCI]'s exhibit # 7 of all backcharges ($130,243), the barn back charge cost is listed as $8,125 plus overhead/profit. This issue, with the earlier unresolved claim for the core trench clay, was followed by [MCI's] direction to [appellee] to perform work not required of the contract and to re-work material resulting from the exposure of the site through the winter.

[MCI] has failed to refute [appellee's] position that, barring areas where they could not work, they [appellee] had brought the site to sub-grade. The aggregate of these issues has resulted in a cardinal change in the scope of work being imposed on [appellee]. For whatever reason that this project became fragmented, it is not surprising that [MCI] expended a considerable sum on "dirt issues," however, of this amount, only a small portion of this cost would appear to be related in any way to [appellee's] scope of work. Therefore, in recognition of these issues and the likely prospect that there may be no payment forthcoming, [appellee] has prevailed in their position to terminate the contract and pursue collection for work performed.

Accordingly, I AWARD as follows:

[MCI] shall pay to [appellee] the sum of FORTY-THREE THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS ($43,500.00) within thirty days(30) from the date of this Award. . . . This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

MCI filed a Petition to Vacate Arbitration Award, which the court (Nichols, J.) denied in an Order of Court dated March 16, 2005. Subsequently, appellee moved for Entry of Final Order Establishing Mechanic's Lien Pursuant to Arbitration Award for a reduced amount on January 19, 2005. Appellee claimed:

That pursuant to agreement between the parties, this matter was continued and essentially stayed until such time as [appellee] and general contractor [MCI] on the job for [appellant] arbitrated the disputed issues pursuant to an arbitration clause in the contract between the respective parties.

That the parties have in fact arbitrated that issue and . . . the Award granted by the arbitrator [to Appellee] and the American Arbitration Association on or about December 30, 2004.

That as evidenced by the Award, [appellee] is entitled to a mechanic's lien in the amount of $43,500.00.

That further, there is no legal defenses [sic] to the claim of [appellee] and therefore a Final Order Establishing Mechanic's Lien ought to be entered in this matter against [appellant's] property.

Appellant argued, in response, that the arbitrator exceeded his authority in making the award and that the award to appellee was arbitrary and without evidentiary support. Appellant insisted that it would be improper for the court to establish the lien given that MCI filed a petition to vacate the arbitration award. As such, appellant requested that the court deny appellee's motion.

The court reviewed appellee's motion and appellant's response and found:

Upon the Motion for Entry of Final Order Establishing Mechanic's Lien Pursuant to Arbitration Award, no Answer having been filed by [appellant] and it appearing that there is no genuine dispute as to any material fact and that the lien should attach as a matter of law it is this 28th day of March, 2005, by the Circuit Court for Prince George's County,

ORDERED, that a Mechanic's Lien be and it is hereby established in the amount of $43,500.00 in favor of [appellee] against the land and improvements consisting of demolition, clearing, sediment control, site excavation and rough grading for a free-standing church owned by Cottage City Mennonite Church at the address known as 10411 Greenbelt Road, Lanham, Prince George's County, Maryland, and which property is more particularly described as the Cottage City Mennonite Church; and it is further

ORDERED, that the said property shall be sold unless the amount of the Mechanic's Lien in the sum of $43,500.00, together with interest and costs be paid on or before the 5th day of May, 2005, and it is further

ORDERED, [Counsel for appellee] be and is hereby appointed Trustee to make such sale. . . .

The clerk of the court entered the Final Order on April 4, 2005. Appellant filed a Motion to Vacate Final Order Establishing Mechanic's Lien Pursuant to Arbitration Award or in the Alternative Stay Execution Pending Motion to Reconsider on April 27, 2005. Appellant subsequently filed its timely Notice of Appeal to this Court on May 3, 2005. The circuit court summarily denied appellant's Motion to Vacate in an Order dated May 10, 2005, and docketed May 12, 2005.[1] Appellant also filed a Reply to appellee's response opposing appellant's Motion to Vacate; it was filed, however, four days after the court below entered its order denying the motion.

## LEGAL ANALYSIS

Appellant argues that the circuit court erred, abused its discretion and denied it due process of law in violation of the Maryland Declaration of Rights Article 24[2] when it entered the Final Order in favor of appellee and against appellant where appellant was not a party to the arbitration and did not have an opportunity to "present its independent defenses to the Mechanic's Lien at statutorily prescribed hearings." Appellant also contends that the court abused its discretion in that it refused to vacate the Final Order without considering appellant's timely filed Response to Plaintiff's Motion for Entry of Final Order, and entered the mechanic's lien in this case based upon an arbitration award that was the "basis for an un-enrolled judgment" in another circuit court case. We disagree, and, accordingly, shall affirm the judgment of the circuit court.

---

1. The docket entries incorrectly list that Judge Dawson issued this order when it was, in fact, Judge Martin, who signed and issued the order for the circuit court.

2. Article 24 states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by judgment of his peers, or by the Law of the land." Md.Code (2003 Repl.Vol., 2005 Supp.), Const., Decl. of Rights, Art. 24.

## I

As is the case with the matter before us, "[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." *Md. Rule 8–131(c)(2006)*. We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*

With respect to the mechanic's lien statute, Judge Wilner, writing for the Court of Appeals, explained:

> The mechanic's lien law has historically been construed "in the most liberal and comprehensive manner in favor of mechanics and materialmen." *T. Dan Kolker, Inc. v. Shure*, 209 Md. 290, 296, 121 A.2d 223, 226 (1956) and cases cited therein. Indeed, the law itself provides that it is remedial and is to be construed to give effect to its purpose. § 9–112 [of the Real Property Article]. *The need for a liberal construction is particularly important with respect to subcontractors who, though benefitting the owner and enhancing the value of the owner's property by the provision of their labor or materials, have no direct contractual relationship with the owner and therefore cannot otherwise subject the owner's property or assets to the payment of their claims.* That bent of the statute in favor of subcontractors has always been subject to the caveat, however, that, as a mechanic's lien was unknown at common law and is purely a creature of statute, it is "obtainable only if the requirements of the statute are complied with." *Freeform Pools v. Strawbridge*, 228 Md. 297, 301, 179 A.2d 683, 685 (1962); *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 536, 379 A.2d 1227, 1231 (1977).

*Winkler Construction Co., Inc. v. Jerome*, 355 Md. 231, 246–47, 734 A.2d 212 (1999)(emphasis added). *See also Kaufman v. Miller*, 75 Md.App. 545, 542 A.2d 391 (1988)(holding that the mechanic's lien statute also permits general contractors the opportunity to establish and enforce liens against owners).

We reiterated the show cause procedure associated with mechanic's lien matters in *Reisterstown Lumber Co. v. Royer*, 91 Md.App. 746, 754–55, 605 A.2d 980 (1992)(quoting *E.L. Gardner, Inc. v. Bowie Joint Venture*, 64 Md.App. 302, 305–06, 494 A.2d 988 (1985), *cert. denied*, 304 Md. 296, 498 A.2d 1183 (1985))(emphasis in original):

> The proceeding is commenced by a petition or complaint setting forth certain required information about the parties, the property, and the basis of the claim. . . . If, upon review of the petition and any exhibits appended to it, the court determines, preliminarily, that a lien should attach, it must issue an order directing the owner to show cause why the requested lien should not attach. . . .
>
> Upon the owner's response (or upon his failure to respond within the time set by the show cause order), the court must review the matter again and take one of three actions. If the evidence then before it shows that 'there is no genuine dispute as to any material fact and that the lien should attach [in whole or in part] as a matter of law,' the court must enter a final order establishing the lien, at least for that part of the claim not in dispute. . . . If, conversely, the evidence shows that 'there is no genuine dispute as to any material fact and that the petitioner failed to establish his right to a lien as a matter of law, than a final order shall be entered denying the lien for cause shown. . . .'
>
> If, however, the court determines from the evidence before it 'that the lien should not attach, or should not attach in the amount claimed, as a matter of law, by any final order, but that there is probable cause to believe the petitioner is entitled to a lien,' the court must enter an interlocutory order that, among other things, establishes the lien in the amount for which probable cause is found and assigns a date 'for the trial of all the matters at issue in the action. . . .'
>
> In essence, the sole function of the court at that stage of the proceeding is to determine whether there is a genuine dispute of material fact and, if not, whether the claimant

is, or is not, entitled to a lien as a matter of law. . . . [T]he court is then 'in the same position as a judge passing upon a motion for summary judgment' and it is 'not justified in weighing the evidence and adjudicating the case. . . .' (Citations omitted.)

This language, however, only covers the first step in the process: the determination of whether there are any genuine disputes of material fact. It is at this stage that the prohibition against weighing facts, . . . is relevant. In other words, no *final* order establishing or denying a mechanics' lien should be entered if there are any genuine disputes as to material fact.

*See also Caretti, Inc. v. Colonnade Ltd. P'ship,* 104 Md.App. 131, 135, 655 A.2d 64 (1995), *cert. denied,* 339 Md. 641, 664 A.2d 885 (1995)(noting that "the claimant does not get his lien until the court establishes it, and the court may not establish it until, after considering any response by the owner to the claimant's petition, the court finds at least probable cause to believe that the claimant is entitled to a lien").

## II

We shall address appellant's first and second presented issues simultaneously. Our review of the evidence and the facts of this case, in conjunction with the mechanic's lien statute and case law, constrains us to conclude that the court did not err, abuse its discretion or deny appellant the right to due process under Article 24 of the State's Declaration of Rights when it entered its Final Order establishing a lien against appellant without affording appellant an opportunity to present "independent defenses" at "statutorily prescribed hearings." We also do not perceive of any abuse of discretion by the court in entering the Final Order and not vacating the Order based upon appellant's failure to file an answer in this matter. We agree with appellee's assertion that many of appellant's issues on appeal were occasioned by its own failures when this matter was before the circuit court.

■ Generally, the mechanic's lien statute was enacted to ensure that subcontractors, like appellee, would ultimately be compensated for work performed or materials delivered, despite the absence of a contractual relationship between the subcontractor and the owner of the property. *See Winkler, supra; Ridge Heating, Air Conditioning and Plumbing, Inc. v. Brennen,* 366 Md. 336, 783 A.2d 691 (2001); *Brendsel, et al. v. Winchester Construction Co., Inc.,* 162 Md.App. 558, 875 A.2d 789, (holding that because a general contractor filed a mechanic's lien petition, the lien filing did not indicate any intent to forego arbitration of the contractual dispute where there was also evidence that supported the contractor did not waive its right to arbitrate), *cert. granted,* 389 Md. 124, 883 A.2d 914 (2005).

■ As such, where appellant was a party to the prime contract unto which all of the parties initially signed, appellant's argument that the lien should not have been ordered because it was not a party to the arbitration between appellee and MCI is wholly without merit. Appellant hired MCI to be the prime contractor to construct its church building, with appellee serving as a subcontractor during the construction. The lien statute makes clear that, if for some reason appellee did not receive payment for its work from MCI—the prime contractor—appellee may seek to enforce payment for its work on the property against appellant, owner of the property. As a result, appellee filed its complaint to establish a mechanic's lien against appellant in order that appellant not be able to avoid payment.

The Court of Appeals, concerning materialmen, has penned: It is an accepted rule that where a plaintiff has established a *prima facie* case [for a mechanic's lien], and the defendant seeks to support his defense by facts which are or ought to be within his knowledge, the burden shifts to him. *So, while the burden is on the materialman in a mechanic's lien case to establish the fact that he delivered the materials for which he claims the lien, it will be presumed that all materials which he shipped to the defendant were duly*

*delivered, in the absence of some direct evidence to the contrary.* In the case before us no evidence was produced to contradict the *prima facie* evidence that the materials as ordered and charged had been delivered to defendants. We, therefore conclude that the evidence was sufficient to support the finding of the chancellor that the materials were delivered to defendants.

*District Heights Apartments, Section D–E, Inc. v. Noland Co., Inc.,* 202 Md. 43, 50–51, 95 A.2d 90 (1953)(emphasis added). *See also Allied Bldg. Products Corp. v. United Pacific Ins. Co.,* 77 Md.App. 220, 235, 549 A.2d 1163 (1988)(utilizing the Court's analysis for review of general contractor's factual defense by way of affidavit under summary judgment).

As the statute provides,[3] appellant had its opportunity to present "independent defenses" in this case after the court

---

**3.** Pursuant to Md.Code (2003 Repl.Vol., 2005 Supp.), Real Prop., §§ 9–106(a)–(b)(1):

(a)(1) When a petition to establish a mechanic's lien is filed, the court shall review the pleadings and documents on file and may require the petitioner to supplement or explain any of the matters therein set forth. If the court determines that the lien should attach, it shall pass an order that directs the owner to show cause within 15 days from the date of service on the owner of a copy of the order, together with copies of the pleadings and documents on file, why a lien upon the land or building and for the amount described in the petition should not attach. Additionally, the order shall inform the owner that: (i) He may appear at the time stated in the order and present evidence in his behalf or may file a counteraffidavit at or before that time; and
(ii) If he fails to appear and present evidence or file a counteraffidavit, the facts in the affidavit supporting the petitioner's claim shall be deemed admitted and a lien may attach to the land or buildings described in the petition.
(2) If the owner desires to controvert any statement of fact contained in the affidavit supporting the petitioner's claim, he must file an affidavit in support of his answer showing cause. The failure to file such opposing affidavit shall constitute an admission for the purposes of the proceedings of all statements of fact in the affidavit supporting the petitioner's claim, but shall not constitute an admission that such petition or affidavit in support thereof is legally sufficient.
(3) An answer showing cause why a lien should not be established in the amount claimed shall be set down for hearing at the earliest possible time.

entered its order for appellant to show cause why the lien should not have attached to its property. At that juncture, appellant did not file an Answer, but instead filed two consent motions with appellee and a Motion to Compel Arbitration and/or Dismiss Complaint before the arbitration decision. Appellant failed to present any defenses as contemplated by the statute and applicable case law, in the aforementioned documents. Appellant argues that, although it entered into the Consent Motion to Stay Proceedings, it *"did not* consent to the entry of lien against [its] property based on any unresolved outcome of the arbitrations and the Contract case," and *"did not* consent to the entry of lien against [its] property without the opportunity to present [] defenses at the statutorily prescribed hearings." We agree that appellant did not consent to the entry of the lien and, in our opinion, appellee did not view the Consent Motion to Stay as a concession by appellant to the entry of the lien. Appellant's failure to file any defense after the court entered its show cause order, rather than appellant's consent to the lien, however, led to the entry of the court's Final Order.

Appellant had another opportunity to defend against the mechanic's lien case when appellee moved to have a final order entered to establish the lien. Assuming, without deciding, that appellant could have, pursuant to the statute, filed a defense in its response to appellee's motion, appellant, once again, failed to raise any meritorious defenses to counter appellee's motion within its Response. In its Response, appellant criticized the arbitration award as being arbitrary and without merit, asserted that MCI petitioned the court to vacate the arbitration award and argued that it would have been improper for the court to establish the lien before MCI's petition was heard. Any defenses from appellant were absent.

---

(b)(1) If the pleadings, affidavits and admissions on file, and the evidence, if any, show that there is no genuine dispute as to any material fact and that the lien should attach as a matter of law, then a final order shall be entered establishing the lien for want of any cause shown to the contrary.

Based upon the facts of this case, we conclude that appellant had ample opportunity to shoulder its burden of presenting defenses available to it, if any, to defend against appellee's *prima facie* mechanic's lien action. It simply did not satisfy its burden of production and failed to avail itself of its opportunities to enter any defenses before the circuit court. Consequently, we hold that the court did not err, abuse its discretion, or deny appellant due process rights in entering the Final Order against appellant for its failure to defend.

We also perceive no abuse of discretion with respect to the court's entry of its Final Order as a result of appellant's failure to file an Answer as contemplated by the mechanic's lien statute. Pursuant to Maryland Rule 12–304(c):

**(c) Answer; Failure to File Deemed Admission.** A defendant may controvert any statement of fact in the plaintiff's complaint by filing an answer under oath. The failure to file an answer within the time allowed by the order shall constitute an admission for the purpose of the action of all statements of fact in the plaintiff's complaint, but shall not constitute an admission that the complaint is legally sufficient.

In the case *sub judice,* the court found that appellant did not file an answer. Appellant contends that its Motion to Compel Mediation and/or Arbitration and to Dismiss Complaint was timely filed after the court entered its Show Cause Order, in that its Motion was filed two days prior to the court's deadline for Answers of May 27, 2004. The motion also included a sworn verification by Winger of the allegations as set forth by appellant. As in our analysis with respect to appellant's defenses, *supra,* what was contained, *vel non,* within appellant's motion was significant.

Appellant claimed, in its motion, that appellee agreed to mediate and arbitrate any and all disputes that arose among all parties to the prime contract. As such, appellee's complaint should have been dismissed because appellee was required to mediate or arbitrate the matter and was not entitled to any relief by way of a mechanic's lien. What was lacking in

appellant's motion was any statement of fact from appellant controverting any facts listed in appellee's initial complaint, which included a sworn affidavit.

Appellee averred in its complaint:

[Appellee] sold to [MCI] ... for use in [appellant's] property demolition, clearing, sediment control, site excavation, and rough grading, all pursuant to the terms of said contract.... Said materials and/or labor having been delivered to [appellant's] property from August 6, 2003, through December 23, 2003. Said material was delivered pursuant to a contract entered with [MCI] ... said contract calling for demolition, clearing, sediment control, site excavation, and rough grading....

[Appellant's] property to which the materials were delivered consists of a church site currently under construction, into which the services and materials were incorporated into a lot fronting [the property]....

There remains due and owing to [appellee] the sum of $76,100.00 in accordance with the job work orders invoices.... Said job work orders and/or invoices itemized those items of labor, yet unpaid, pursuant to the terms of the Contract. The copies of the ... invoices constitute the basis of this lien claim.

On the 30th day of March, 2004, [appellee] caused to be sent to [appellant], by certified mail, return receipt requested, an Amended Notice to Owner of Intention to Claim a Lien, ... in compliance with a[sic] Real Property Article, Annotated Code of Maryland. This [Amended] Notice was received by [appellant]....

That the construction into which the materials and/or services referred to herein were incorporated is new construction.

WHEREFORE, [appellee] prays this Honorable Court:

(a) To establish a Mechanic's Lien against the property and improvements hereof of [appellant] in the sum of $49,185.00 plus pre-judgment interest....

It is clear from R.P. § 9–106(a) through (b)(1) and Rule 12–304 that when appellant failed to file an answer, or more specifically, failed to properly answer or contradict any of appellee's allegations, the circuit court was statutorily bound to accept all statements of fact of appellee's affidavit as "admission[s] for the purposes of the proceedings." *See* Md. Code (2003 Repl.Vol., 2005 Supp.), Real Prop., § 9–106(a)(2); Md. Rule 12–304(c), *supra*. Without an answer from appellant, the court also had the discretion to enter an order granting the requested relief *without a hearing or without further notice to appellant.*[4] Furthermore, once the court found that appellee's admissions, pleadings and evidence demonstrated that there was no genuine dispute as to a material fact, as was noted in the court's Final Order, appellee was entitled to judgment establishing the mechanic's lien as a matter of law. Md.Code (2003 Repl.Vol., 2005 Supp.), Real Prop., § 9–106(b)(1); Md. Rule 12–304(e)(1). Appellant's neglect in not satisfying its burden and specifically answering appellee's statements of facts, therefore, constrained the court to find for appellee. Thus, we hold that the court did not abuse its discretion in entering the Final Order in favor of appellee.

# III

█ Lastly, appellant contends that the court abused its discretion by entering the Final Order establishing the lien on an arbitration award that was "the basis for an un-enrolled judgment in a second Circuit Court case," where, as appellant alleges, the parties agreed to stay proceedings in the pending arbitration and contract case. We also reject this contention.

---

4. Md. Rule 12–304(d)(2006) provides:
   If the defendant fails to answer within the time allowed by the order, the court may at any time thereafter, without hearing and without further notice to the defendant, enter an order in conformity with section (e) of this Rule. If the defendant files an answer in compliance with the order, a hearing shall be held as scheduled.

Upon examining the parties' Consent Motion to Stay Proceedings, it is evident that both appellant and appellee jointly agreed to a stay of the court proceedings pertaining to appellee's mechanic's lien complaint until the outcome of appellee's arbitration claim against prime contractor, MCI. Despite appellant's statement in its brief that the parties agreed to stay the lien case until the outcome of the arbitration matter and a separate breach of contract case appellee has against MCI, the parties' Motion to Stay Proceedings in this matter clearly stated the parties agreed to stay the proceedings, " ... *pending the outcome of the pending arbitration [between MCI and appellee]."*

The parties also agreed that appellee filed the arbitration claim "to resolve the merits of [appellee's] Complaint in [the lien] matter." The parties did not include any phrase that referred to a stay of the hearing on the order to show cause because of a subsequent breach of contract case between appellee and MCI, a claim that appellant continuously sets forth in its brief. Accordingly, it was reasonable for the court, as trier of fact, to conclude that appellant and appellee were awaiting only the arbitrator's decision, and that the outcome at arbitration would determine the merits and posture of appellee's lien case against appellant as owner of the subject property.

After the court reviewed the Consent Motion to Stay, the court granted the motion and, in essence, memorialized the agreement between the parties that the outcome of the arbitration proceedings would directly impact appellee's mechanic's lien case. This consent to stay as stipulated to by appellant and appellee dictated the manner by which the court would analyze the lien case once the arbitration award was rendered. The court did not abuse its discretion in upholding the parties' agreement, as claimed under this argument, considering that the court merely maintained the arrangement to which the parties had assented, that appellee's arbitration against MCI would decide the merits of appellee's lien case against appellant. *See Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 543, n. 12, 836 A.2d 655 (2003)(articulating

that "[t]he scope of a judicial proceeding may be narrowed by the agreement of the parties and thus without an act of the Legislature. In the absence of procedural rules or statute, the parties themselves may, by agreement, limit the issues that a court will consider within a given dispute.") Appellant cannot now ignore the arbitration decision because the arbitrator did not find in its favor. As such, we shall not disturb the court's grant of that motion and its subsequent entry of the lien.

Turning specifically to appellant's arguments concerning the contract case, the contract case between appellee and MCI was not part of the Consent Motion to Stay the arbitration. We also emphasize that the court reviewed pleadings subsequent to the arbitration award and the entry of Final Order that discussed this second case appellant alludes to in its brief, and denied MCI's Petition to Vacate Arbitration Award and appellant's Motion to Vacate Final Order. In its denial, the court, in effect, ruled that the circumstances of the second case did not apply and were not a factor to the lien proceedings before it. We reiterate that appellant's failure to comply with the statutory and procedural rules pertaining to mechanic's liens was the primary basis that led the court to establish the lien for appellee and against appellant's property. As a result, we shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**