**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-2274**
_____

EUN O. KIM; AMY HSIANG-CHI TONG; CHIN KIM; DANIEL I. KIM;
GOOM Y. PARK; GYEASOOK KIM; KAP J. CHUNG; HONG S. CHUNG;
LENA KIM; MI YOUNG KIM; MYONG HO NAM; YOUN HWAN KIM; YOUNG
JOO KANG; ALAN YOUNG CHENG; SHUI QUI ZHANG; EVA YIHUA TU;
HELENA LEE; KI N. LEE; SUN H. LEE; KWANG BAG LEE; KWANG JON
KIM; NAM DOLL HUH,

Plaintiffs - Appellants,

v.

PARCEL K- TUDOR HALL FARM LLC,

Defendant - Appellee,

and

DOUGLAS A. NYCE; NYCE AND CO., INC.,

Defendants.

_____

**No. 11-2298**
_____

EUN O. KIM; AMY HSIANG-CHI TONG; CHIN KIM; DANIEL I. KIM;
GOOM Y. PARK; GYEASOOK KIM; KAP J. CHUNG; HONG S. CHUNG;
LENA KIM; MI YOUNG KIM; MYONG HO NAM; YOUN HWAN KIM; YOUNG
JOO KANG; ALAN YOUNG CHENG; SHUI QUI ZHANG; EVA YIHUA TU;
HELENA LEE; KI N. LEE; SUN H. LEE; KWANG BAG LEE; KWANG JON
KIM; NAM DOLL HUH,

Plaintiffs - Appellees,

v.

PARCEL K- TUDOR HALL FARM LLC,

              Defendant - Appellant,

      and

DOUGLAS A. NYCE; NYCE AND CO., INC.,

              Defendants.

---

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:09-cv-01572-AW)

---

Argued: October 25, 2012          Decided: December 17, 2012

---

Before KING and FLOYD, Circuit Judges, and R. Bryan HARWELL, United States District Judge for the District of South Carolina, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** James P. Koch, Baltimore, Maryland, for Appellants/Cross-Appellees. Stephen Ari Metz, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, PA, Potomac, Maryland, for Appellee/Cross-Appellant. **ON BRIEF:** Morton A. Faller, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, PA, Potomac, Maryland, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2004, Sunchase Capital Partners XI, LLC, purchased 141 acres of real property from Tudor Hall Farm, Inc. This property included a parcel known as Parcel K, to which Appellee and Cross-Appellant Parcel K-Tudor Hall Farm, LLC, (PK-THF) took title. To raise funding for the purchase, Sunchase asked individuals—including Eun O. Kim and the other twenty-one appellants and cross-appellees (collectively "the Investors")—to invest in the project. Sunchase ultimately filed for bankruptcy. Under its Chapter 11 plan, Sunchase sold all of the Tudor Hall Farm property except Parcel K, and the Investors received nothing.

The Investors brought a cause of action against PK-THF, seeking to impose a constructive trust on Parcel K because, according to the Investors, PK-THF came to own it due to Sunchase's fraudulent behavior. The district court granted the Investors' motion for summary judgment and imposed a constructive trust in the amount of $50,640. The Investors now appeal, challenging the method the district court used to value the constructive trust, and PK-THF cross-appeals the district court's decision to impose the trust. For the reasons set forth in the district court's opinion, we affirm the district court's imposition of a constructive trust and its adoption of the "proportionality approach" to value the trust. See Kim v. Nyce,

3

807 F. Supp. 2d 442 (D. Md. 2011). However, because we find that the district court erred in its application of the proportionality approach, we vacate in part and remand for further proceedings.

I.

A.

In April 2004, Sunchase signed an Agreement of Sale to purchase property from Tudor Hall Farm, Inc., for $15 million. The Agreement concerned 141 acres of real property known as Parcels A, B, C, E, F, G, H, I, J, and K. Pursuant to the Agreement, PK-THF obtained title to Parcel K, which consisted of 7.88 acres, and Sunchase took title to the remaining parcels. Both Sunchase and Tudor Hall Farm possessed initial membership stakes in PK-THF, with Sunchase taking an eighty-percent membership interest and Tudor Hall Farm taking the remaining twenty-percent stake. Nyce & Co., Inc.—a company owned by Douglas A. Nyce—was a Class B member of Sunchase and had the sole authority to make all decisions with respect to Sunchase's management and operations.

To raise the $15 million necessary to purchase the property, Sunchase offered 100 Class A membership units in Sunchase for $150,000 each. The Investors purchased these Class A units. Pursuant to the Confidential Summary of Offering, which described the investment plan, the "Minimum Offering" was

4

fifty Class A units or $7.5 million.  The Confidential Summary also specified that, if Sunchase did not raise $15 million by selling 100 Class A units—the "Maximum Offering"—and could not obtain alternate funding, it would not purchase the property. As part of their transaction with Sunchase, each investor signed a Subscription Agreement that required Sunchase to terminate the offer and return each investor's payment "if subscription[s] for at least 50 Units [were] not received and accepted by the Company on or prior to April 29, 2005."  Each investor also signed an Operating Agreement, which obligated Nyce to "act at all times in a fiduciary manner toward the Company and the Members."

Sunchase closed on the Tudor Hall Farm property on May 2, 2005, despite its failure to raise the $15 million required in the Confidential Summary.  As of the closing date, Sunchase had made $3.125 million by selling Class A membership units. Sunchase sold an additional $3.972 million in Class A membership units over the next three months, bringing its total to $7.097 million, $3.120 million of which came from the Investors.  This total fell $403,000 short of the Minimum Offering and $7.903 million short of the Maximum Offering.  In light of this shortfall, Sunchase negotiated a modification of the Agreement of Sale, which allowed Sunchase to pay Tudor Hall Farm in installments under the terms of a Purchase Money Note in

5

exchange for a $500,000 increase in the purchase price of the property. A first deed of trust on the property secured the Purchase Money Note.

When Sunchase experienced difficulties making payments on the Purchase Money Note, Nyce asked William D. Pleasants to make a $5.25 million investment in Sunchase. Via the 2003 Trust of the Descendants of William D. Pleasants, Jr. (Pleasants Trust), Pleasants made a $5.315 million investment in Sunchase in exchange for a Class A membership interest, leaving the Investors with a twenty-five-percent Class A membership interest.[1] The Pleasants Trust created Tudor Hall Funding, Inc., to oversee the investment, and Tudor Hall Funding ultimately purchased the Purchase Money Note from Tudor Hall Farm. Sunchase eventually defaulted, causing Tudor Hall Funding to initiate foreclosure proceedings against the Tudor Hall Farm property. Parcel K was not included in the foreclosure proceedings.

On September 10, 2007, Sunchase filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for

---

[1] We arrive at this figure by adding the Investors' $3.12 million contribution, the non-litigant Class A investors' $3.977 million contribution, and the Pleasants Trust's $5.315 investment, creating a sum of $12.412 million. The Investors' $3.12 million contribution is approximately twenty-five percent of $12.412 million.

the District of Maryland. Sunchase and Tudor Hall Funding proposed a Chapter 11 plan that required Sunchase to sell the property to Tudor Hall Funding free of any liens, claims, and encumbrances to satisfy Sunchase's obligation under the Purchase Money Note. The sale did not affect Parcel K, which PK-THF continued to own. Under the plan, Sunchase's Class A members—including the Investors—received nothing, their equity interests were eliminated, and they were prohibited from bringing certain claims against Tudor Hall Funding. The plan allowed Sunchase to assign its eighty-percent membership interest in PK-THF to Tudor Hall Funding. In a separate transaction, Tudor Hall Funding acquired Tudor Hall Farm's twenty-percent interest in PK-THF, making Tudor Hall Funding the sole owner of all membership interests in PK-THF. On March 13, 2009, the bankruptcy court confirmed the proposed plan.

B.

The Investors allege that Nyce created a constructive trust in Parcel K when he used fraudulent methods to sell Sunchase's Class A membership units and purchase the property. Although PK-THF obtained title to Parcel K, the Investors contend that their funding is traceable to the purchase of that property, giving them an equitable claim to Parcel K. On October 1, 2009, the district court entered default judgments against Nyce and

7

Nyce & Co. in the amount of $3.12 million, which left the Investors' constructive trust cause of action against PK-THF as their only remaining claim.

The district court granted the Investors' motion for summary judgment on the constructive trust issue on September 2, 2011, holding in relevant part that (1) Sunchase had used the Investors' funds to purchase Parcel K, (2) Nyce had obtained those funds through fraud or other improper conduct, (3) it would be unjust for PK-THF to retain the benefit of this fraud, and (4) Sunchase's Chapter 11 plan did not enjoin the Investors' claims. To determine the appropriate valuation for the constructive trust, the district court invited both parties to submit memoranda regarding which portion of the Investors' $3.12 million contribution Sunchase used to purchase Parcel K.

On November 2, 2011, the district court found that the Investors were entitled to a constructive trust on Parcel K in the amount of $50,640.[2] The Investors argued that the court

---

[2] The district court referred to this amount as the "constructive trust lien." The Investors suggest that this terminology is "internally inconsistent" because a party cannot have the "unlimited ownership interest" that a constructive trust provides and have a lien valued at less than that amount. The district court was presumably determining the value of the constructive trust, which at least one other court has allowed. See generally Pike v. Commodore Motel Corp., Civ. A No. 940, 1989 WL 57026 (Del. Ch. May 25, 1989). To mirror the terminology that other courts have employed, we refer to the

8

should take a "commingled funds approach" and impose a trust equivalent in value to the Investors' total investment: $3.12 million. Instead, the district court arrived at the $50,640 figure by adopting PK-THF's proposed "proportionality approach." Because the Investors contributed $3.12 million—or approximately twenty percent of the total purchase price for the Tudor Hall Farm property—the district court found that the trust should equal twenty percent of the purchase price of Parcel K. The court acknowledged that the parties had not introduced any "direct proof as to what dollar amount of the acquisition went toward Parcel K" and decided to use the consideration recited in the deed—$253,200—as the purchase price when calculating the trust's value. See Kim, 807 F. Supp. 2d at 455, 457. This amount stems from Maryland's tax assessment of Parcel K and contradicts the value included in the Operating Agreement, which sets Parcel K's value at $1 million "for all purposes."

In this appeal, the Investors challenge the district court's decision to employ a proportionality approach, and PK-THF cross-appeals the court's finding that a constructive trust was appropriate. We affirm the district court's decision to impose a constructive trust and its adoption of the

"value" or "amount" of the trust rather than a "constructive trust lien."

9

proportionality approach to calculate the trust's value. However, we vacate in part the district court's grant of summary judgment and remand for further consideration of (1) whether $253,200 is the appropriate purchase price to use when calculating the trust's value and (2) whether the trust should equal twenty percent of the purchase price of Parcel K.

II.

Having had the benefit of oral argument and after carefully reviewing the briefs, record, and controlling legal authorities, we agree with the district court's analysis with respect to its decision that the facts of this case warrant the imposition of a constructive trust. See Kim, 807 F. Supp. 2d at 448-49, 451-52. Specifically, we agree that (1) the Investors' funds are traceable to Parcel K, (2) Nyce and Nyce & Co. obtained those funds through fraud, (3) it would be unjust for PK-THF to retain the benefit of this wrongful conduct, and (4) Sunchase's Chapter 11 plan does not enjoin the Investors' claims. Accordingly, we affirm the district court's decision to impose a constructive trust on the reasoning of the district court.

III.

A.

We also agree that the district court correctly adopted PK-THF's proposed "proportionality approach" rather than the Investors' suggested "commingled funds approach." See Kim, 807 F. Supp. 2d at 456-58. We therefore affirm the district court's decision to use the proportionality approach on the reasoning of the district court. However, as discussed below, we find that the district court erred in its application of the proportionality approach.

B.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court considering a summary judgment motion must view the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Because this case concerns cross-motions for summary judgment, we consider "each motion . . . individually, and [view] the facts relevant to each . . . in the light most favorable to the non-

11

movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003). We review de novo both the district court's decision to grant the Investors' motion for summary judgment and its conclusions of law. Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 724 (4th Cir. 2000); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

The Investors claim that the district court erred in determining the value of Parcel K, which resulted in the court incorrectly computing the amount of the constructive trust. The Investors make two arguments regarding why the district court erred when it set Parcel K's value at $253,200. First, the Investors contend that the district court should not have decided this issue on summary judgment. Although the district court concluded without discussion that the value recited in the Parcel K deed—$253,200—constituted the "best evidence" of Parcel K's purchase price, the record contains additional evidence of Parcel K's value that the district court did not acknowledge: the $1 million figure that appears in the Operating Agreement. The Investors contend that the existence of two estimates of Parcel K's value created a genuine dispute of material fact, so the district court should not have resolved the issue on summary judgment. We agree.

Second, the Investors argue that the district court erred when it used the value recited in the Parcel K deed as the

12

purchase price because this figure was drawn directly from Maryland's tax assessment of Parcel K.  In E.L. Gardner, Inc. v. Bowie Joint Venture, the Maryland Court of Appeals explained that "generally, in and of itself, assessed valuation is not admissible as evidence of valuation for purposes other than taxation."  494 A.2d 988, 991 (Md. 1985) (quoting C.C. Marvel, Annotation, Valuation for Taxation Purposes as Admissible to Show Value for Other Purposes, 39 A.L.R.2d 209, § 2 (1955)) (internal quotation marks omitted).  The primary rationale for this rule is that the tax assessment value typically does not mirror the fair market value of the property.  Marvel, 39 A.L.R.2d at § 2.  The district court did not consider the deed value's connection to the Maryland tax assessment figure in its opinion.

In their brief, the Investors illustrate the applicability of the rationale behind not using tax assessment values in non-tax contexts in this case.  The Investors explain that using the tax assessment as the purchase price yields a price per acre of $32,132[3] for Parcel K, which is drastically different from the

---

[3] The Investors calculated the price per acre to be $32,106 because they rounded the deed price to $253,000.  Our figure differs because we did not round the deed price.

13

$108,924 per acre[4] that Sunchase paid for the other Tudor Hall Farm parcels. By contrast, using the Operating Agreement's $1 million figure as the purchase price produces a price per acre of $126,904, which is more consistent with the price that Sunchase actually paid for the other parcels. The rule against using tax assessments for non-tax purposes and this case's alignment with the rationale behind that rule further illustrates that the district court may have erred when it assumed that the Parcel K deed was the "best evidence" of the property's value. Because the dispute regarding Parcel K's value will affect the outcome of this lawsuit and therefore qualifies as an issue of material fact, the district court should not have resolved the matter on summary judgment.

C.

In addition to contending that the district court erred in determining Parcel K's value on summary judgment, the Investors also argue that the district court erred in calculating which

---

[4] We arrived at this amount by subtracting the Parcel K value recited in the Operating Agreement ($1 million) from the total purchase price ($15.5 million) to determine the purchase price of the other parcels. We then divided this figure ($14.5 million) by the acreage of the other parcels (133.12 acres). Using the $253,200 value recited in the deed as Parcel K's purchase price yields a price per acre of $114,534, which is an even starker contrast.

14

percentage of Parcel K's worth to allocate to the constructive trust. The district court decided to value the constructive trust at twenty percent of Parcel K's purchase price because the Investors' $3.12 million investment represented twenty percent of the $15.5 million purchase price of the Tudor Hall Farm property. Kim, 807 F. Supp. 2d at 457. However, the Investors' contribution also represented a twenty-five-percent Class A membership interest in Sunchase, and Class A membership sales financed Sunchase's purchase of the Tudor Hall Farm property. This discrepancy—which the district court failed to address—creates a genuine dispute of material fact regarding whether the Investors contributed twenty or twenty-five percent of Parcel K's purchase price. The district court therefore erred in resolving this issue on summary judgment.

## IV.

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. On remand, the district court should determine Parcel K's value and consider what percentage of the Investors' contribution financed the purchase of Parcel K. It should then adjust the value of the constructive trust accordingly.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

15